*In re* ESTATE OF MARY A. KOHLEY, Deceased.

*Opinion filed December 16, 1902.*

1. WILLS—*elements essential to probate.* To entitle a will to probate it must be in writing, signed by the testator, or in his presence by some one under his direction; it must be attested by two or more credible witnesses; two witnesses must testify they saw the testator sign the will or that he acknowledged the same to be his act and deed, and they must swear they believe the testator was of sound mind and memory at the time.

2. SAME—*proponent is not limited to subscribing witnesses on appeal.* On appeal to the circuit court from an order of the county court denying probate the proponent is not limited to the testimony of the subscribing witnesses, but may introduce any evidence which would be competent to establish the will in chancery.

3. SAME—*statements of attestation clause entitled to due weight.* The statements of the attestation clause are entitled to due weight, and the mere inability of an attesting witness to recollect the facts therein stated will not defeat the probate.

APPEAL from the Circuit Court of Kane county; the Hon. GEORGE W. BROWN, Judge, presiding.

S. N. HOOVER, and FRANK G. PLAIN, for appellant.

JOHN M. RAYMOND, and MURPHY, ALSCHULER & NEWHALL, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The county court of Kane county denied the petition of Nick Lorenz, executor and principal beneficiary under the will of Mary A. Kohley, deceased, for the probate of said will. He appealed to the circuit court, where the petition was heard by the court and granted, and an order was entered admitting the will to probate. Anna K. Roots, daughter of testatrix, who was contestant in said courts, took this appeal.

To entitle a will to be admitted to probate four things must be proved: The will must be in writing, and signed

by the testator, or in his presence by some one under his direction; it must be attested by two or more credible witnesses; two witnesses must prove that they saw the testator sign the will in their presence or that he acknowledged the same to be his act and deed; they must swear that they believe the testator to be of sound mind and memory at the time of acknowledging the same. (*Dickie* v. *Carter*, 42 Ill. 376; *Crowley* v. *Crowley*, 80 id. 469.) In this case the will was in writing, dated February 10, 1899, and signed by the testatrix. The evidence introduced on the question of her sanity was sufficient to admit the will to probate. The controversy related to the question whether the testatrix signed the will in the presence of the witnesses, or acknowledged the same to be her act and deed and knew its contents. The evidence on that question is in irreconcilable conflict, and there is no controlling fact or circumstance by which the fact can be absolutely determined.

Attached to the will is the usual attestation clause, signed by R. J. Walker and L. B. Judson, Jr. The will was written in the office of Galvin & Judson, a firm of attorneys of Aurora, composed of James F. Galvin and L. B. Judson, Jr., and was prepared by James F. Galvin. Mary A. Kohley, the testatrix, was a German woman, seventy-one years of age, who could not read English and spoke it very imperfectly. At the time of the alleged execution of the will, Galvin called his partner, Judson, from the adjoining room to witness the will, and Judson went to the office of R. J. Walker, a doctor in the same building, and requested him to come in and witness the will. They both signed the attestation clause. When called as a witness, Judson testified that he signed the attestation clause first, but that the testatrix did not sign the will in his presence; that he did not see her sign it; that she sat by a window in the office, and that she did not in any manner, by word or act, acknowledge the paper to be her will, act or deed. He further testified

'that when Dr. Walker came in there was not a word said; that the paper was presented and he saw the doctor reach for a pen, and that the testatrix did not acknowledge the will in the presence of either of the witnesses, and nothing was said by anybody at the time about the paper being a will.   He testified that the directions given by the testatrix to Galvin in the morning when the will was prepared were different from the will as presented for probate.   By the will so presented the testatrix, after providing for the payment of her funeral expenses and debts, devised to Nick Lorenz, the husband of her granddaughter, fifty acres of land in the town of. Batavia, which was substantially all of her property.   She then gave $5 each to her children, and requested that her executor expend the sum of $600 for masses in the holy catholic church for the repose of her soul and the soul of her deceased husband, but it was provided that this should not be a lien or charge on her real estate.   Nick Lorenz was named as executor.   Judson testified that the testatrix told Galvin that she did not want to give Nick Lorenz more than $5; that Galvin told her she must give Nick Lorenz something or she would stand the chance of there being a quarrel over the will; that she said she wanted to give the most of her property to her daughter, and a note to her son for $100 that she had had to pay, and she wanted to give the catholic church something. Dr. Walker had practically no recollection of the occurrence, except that he was called into the office of Galvin & Judson to witness a will and understood that the paper was the will of the testatrix.   He could not tell whether he was informed that it was her will before he went into the office or while he was in the room.   He said he had no conversation with the testatrix and could not recollect that she said anything, and that he was only in the room long enough to write his name and then turn around and walk out.   This testimony would be clearly insufficient, on an application to the county court, to prove the

due execution of the will, but on the appeal proponent was not limited to the testimony of the subscribing witnesses, and was entitled to introduce any evidence which would be competent to establish the will in chancery. *Thompson* v. *Owen*, 174 Ill. 229; *Gould* v. *Chicago Theological Seminary*, 189 id. 282; *Illinois Masonic Orphans' Home* v. *Gracy*, 190 id. 95.

James F. Galvin was the attorney for the proponent in the county court, but other attorneys were substituted in the circuit court, and he then testified to every requirement of the law to make the will a good and valid one. His testimony was, that the will was drawn as directed by the testatrix; that after it was written he went over it with her and read it to her and explained it fully; that when it was executed she stood by him at the desk and told Judson and Walker that it was her will and that she wanted them to sign it as witnesses; that the witness gave her his chair at the desk and she took the chair and signed the will; that Judson then drew up the chair and signed as a witness; that Dr. Walker signed after them; that they both saw her sign the will and that she saw them sign it. Alice M. Callan, the stenographer who was called in by Galvin to receive the dictation for the will, testified that Mrs. Kohley was present; that Galvin had some notes of what was to be put in the will, and asked the testatrix from time to time, as he dictated, whether it was right, and she answered that it was; that the witness took her notes back to her father's office and copied them, and that she brought the draft of the will back to Galvin's office after dinner. Mrs. Kohley had previously deeded her property to her daughter, the contestant, Anna K. Roots, but had become dissatisfied and it had been re-conveyed to her. She made her home with her grand-daughter, to whose husband she devised the property. Ella McNulty testified that the testatrix told her that she had had trouble with Mrs. Roots and would leave nothing to her, and

that she would leave her property to Nick Lorenz. This witness was not friendly to Mrs. Roots and had had a personal difficulty with her. Michael J. Marx testified that the testatrix told him that she had willed $600 to the catholic church, $5 to Mrs. Roots and $5 to her son, Peter Kohley, and the balance to Nick Lorenz. Solomon Kessel testified that the testatrix told him she had had trouble with her daughter, and that she had made a new will and had it changed; that she gave $600 to the catholic church, and the rest, as he understood, was to be left to a tenant on the farm where she made her home, whose name was Lorenz and whose wife was a granddaughter. On the other hand, James Corbin, a witness for the contestant, testified that about February 10, 1899, the date of the will, he saw the testatrix on the street in Aurora having a heated argument with Nick Lorenz, and she told him Lorenz wanted her to make a will in his favor, and she did not want to do it but wanted to make it in favor of her children, and that on the following Saturday he saw her, and she told him that she had made a will and left the property to her children.

The only witness testifying directly to the facts necessary to admit the will to probate was James F. Galvin, who had been the attorney for proponent up to that time. There was a previous will of the testatrix, devising the bulk of her property to the contestant, Mrs. Roots, and both wills had been in Galvin's safe. As affecting the credibility of Galvin and the truthfulness of his testimony, it was proved that after the will presented for probate was filed in the county court he went to the house of Mrs. Roots and told her husband that if he would give him $1000 he would probate the previous will, but if he would not pay him the $1000 he would probate the will in favor of Nick Lorenz. When Mr. Roots said he did not have $1000, Galvin proposed that Mr. and Mrs. Roots should make a note for that amount and secure it by mortgage, and he would probate the will in favor of

Mrs. Roots. The evidence was that he said then that this will was not signed right and could be defeated. Galvin denied having made this proposal, but it was testified to by disinterested witnesses, as well as by Mr. and Mrs. Roots, and there cannot be much doubt of the fact. On the other hand, L. B. Judson, Jr., was the only witness directly contradicting the statements of the attestation clause, and he was interested, professionally, in behalf of contestant, although not appearing in the case. The partnership between Galvin and him had been dissolved and they were not friends. Judson was a lawyer and knew that he was attesting a will. He was called in there by his partner for that purpose and knew that the testatrix had been having a will prepared. He signed the attestation clause, in which he certified that the instrument was signed, sealed, published and declared by the testatrix as and for her last will and testament, in the presence of the attesting witnesses, of whom he was one, who, at her request and in her presence, and in the presence of each other, subscribed their names as witnesses thereto, believing said testatrix to be at the time of sound mind and memory. On the trial he emphatically contradicted all of these things.

The statements of the attestation clause are to have due weight, and the mere inability of an attesting witness to recollect the facts therein stated will not defeat the probate. The failure of Dr. Walker to recollect such facts will not destroy the presumption arising from the attestation clause. (*Gould* v. *Chicago Theological Seminary*, *supra*.) The statutory requisites were all apparently complied with in the execution of the will, and if the evidence tending to show due execution was worthy of credit the requirements of the law to admit the will to probate were met.

It will be manifest from this statement of the evidence that the issue was to be determined from the credibility of the witnesses testifying concerning the material

facts, and upon that question the judge who saw and heard the witnesses had advantages which we do not possess. Weight is to be given to his conclusions in respect to mere questions of credibility on account of such advantages. Under the law and established rules the finding should not be disturbed unless it clearly appears from the record to have been wrong.

In view of all the circumstances and the facts proved affecting the credibility of the two principal witnesses directly contradicting each other as to what took place when the will was signed and witnessed, we are unable to say that the decision of the court is clearly wrong. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*