MARGARET GRACE *et al.* Appellants, *vs.* CLARENCE H. GRACE *et al.* Appellees.

*Opinion filed December 22, 1915.*

1. WILLS—*certificate of testimony of subscribing witnesses authorizes admission of will in evidence.* In a proceeding to contest a will, if the certificate of the testimony of the subscribing witnesses at the probate of the will is in compliance with section 2 of the Wills act its introduction in evidence *prima facie* establishes the competency of the testator and the execution of the will and entitles the will to admission in evidence, even though the *prima facie* case may be overcome.

2. SAME—*when contestant is not rendered competent to testify generally in her own behalf.* The fact that one of the contestants, who is a daughter of the testator, is called as a witness by the proponents and asked questions as to who constituted her father's family, what children he left surviving, what property he owned at his death and who farmed his land, does not qualify her to testify generally in her own behalf nor justify cross-examination as to the condition of the testator's mind.

3. SAME—*right of jury to sustain will and find against codicil.* In a proceeding to contest a will, and a codicil thereto executed some four years after the will was made, the jury have a right to sustain the original will and reject the codicil, if they believe, from the evidence, that the testator was of sound mind when the original will was executed but was of unsound mind when the codicil was executed.

4. SAME—*when instruction does not state different rules as to mental capacity.* An instruction which tells the jury that the testator could dispose of his property by will as he saw fit if at the time he executed the will he had sufficient mind and memory to

know, understand and appreciate the objects of his bounty, the manner in which he wished to dispose of his property by will and the nature and amount of his property, and that if he was of sound mind and memory at the time of executing the codicil he had a right to change the will, thereby does not state different rules, as to mental capacity, for the will and the codicil.

5. SAME—*when an instruction does not make sanity the test of testamentary capacity.* An instruction stating that "to justify a finding of insanity in the making of a will the evidence must preponderate in favor of unsoundness of mind, and the presumption of sanity must prevail if the evidence is only sufficient to raise a doubt of such sanity," does not make sanity the test of testamentary capacity, where other instructions fully explain to the jury the meaning of the expressions "soundness of mind" and "unsoundness of mind," and tell the jury that testamentary incapacity does not necessarily require a person to be technically insane.

APPEAL from the Circuit Court of Macon county; the Hon. W. K. WHITFIELD, Judge, presiding.

CHARLES C. LEFORGEE, (THOMAS W. SAMUELS, and STANLEY L. POGUE, of counsel,) for appellants.

WHITLEY & FITZGERALD, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

James Grace executed his will on June 3, 1908, and a codicil thereto on October 14, 1912, and died on December 30, 1913. In a proceeding in the Macon county circuit court to contest the will and codicil a decree was rendered in accordance with the verdict of a jury sustaining the validity of the will and setting aside the codicil. From that portion of the decree which sustained the will certain of the contestants have appealed.

It is insisted that the court erred in receiving in evidence the purported will and codicil for want of proof of its execution in the manner required by law. The will and codicil were both attested by three witnesses and the certificate of their testimony at the time the will was admit-

ted to probate was received in evidence. This certificate was in strict compliance with the provisions of section 2 of the Statute of Wills, which prescribes the evidence which shall be sufficient proof of the execution of a will to admit it to record. Section 7 of that statute, which provides for the contest of wills, declares that in all trials of such contests by jury the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence and have such weight as the jury shall think it may deserve. When this evidence covering the points prescribed by section 2 has been introduced, the competency of a testator and the execution of the will in legal form has been *prima facie* established. (*Purdy* v. *Hall,* 134 Ill. 298.) If other evidence is introduced this *prima facie* case may be overcome, and in the consideration of the evidence the jury are required to give it only such weight as they shall think it may deserve; but even though the evidence may be contradicted and though the testimony of the attesting witnesses may be inconsistent with the certificate of their oath on the first probate, such certificate constitutes a *prima facie* case which entitles the proponents to introduce the will in evidence.

Catherine Grace, one of the contestants, was called as a witness on behalf of the proponents, and testified who constituted her father's family while he lived in Decatur and what children he left surviving him, what property he owned at his death and who farmed his land after he moved to Decatur. On cross-examination the contestants sought to show by her the condition of her father's mind at the time the arrangement was made in relation to the farming of the land, and it is insisted that it was error for the court to refuse to admit her testimony. This was not cross-examination, but, in any event, she was not a competent witness in her own behalf as to all the issues in the case. Having been called by the adverse party the appellants contend that she was rendered competent to testify

generally in her own behalf. We held otherwise in the case of *Garrus* v. *Davis,* 234 Ill. 326.

It is urged that the verdict and the decree are contrary to the evidence. James Grace was about eighty-four years old when he died. He had lived since 1906 in the city of Decatur and before that time on his farm near Dalton City. Two or three years before his removal to Decatur he had suffered a paralytic stroke, which affected his speech and his use of his limbs to some extent, but particularly his face. His physician at that time testified that he had treated him for facial paralysis. He owned 231 acres of land, a quarter section in Macon county, and 71 acres separate from the rest, in Moultrie county. When he moved to Decatur he bought a lot and erected a dwelling on it, in which he lived the remainder of his life. By his will he devised his residence, together with his household and kitchen furniture, to his wife for life and all the rest of his real estate to trustees during the life of his wife in trust, to manage and control such real estate, to pay his debts, to pay his wife an annuity of $500 and to pay an annuity of $200 to his daughter Catherine. Subject to this trust he devised the 71 acres to his sons Clarence and Jeremiah,—40 acres to Jeremiah and the residue to Clarence. He also gave a legacy of $1000 to Clarence and devised the remainder of the residence property to Catherine. He directed his trustees, within three years after the death of his wife, to sell the Macon county land, and, after the payment of any legacies that might not have been theretofore paid, to divide the remainder of the proceeds among his seven children, except Clarence, Jeremiah and Catherine. He also made a provision for the distribution of the share of his son John, who had been absent and unheard of for many years, in case he should not appear within three years after his wife's death. By the codicil he canceled the legacy of $1000 to Clarence and directed that

270 — 36

the 71 acres in Moultrie county should be divided equally between Clarence and Jeremiah.

The circumstances under which the will and the codicil were prepared do not appear, except that both were drawn by W. C. Outten, a lawyer of the Macon county bar, who attested their execution. He testified at the probate but died before the trial in this case. Both the will and codicil were executed in the Millikin National Bank, in Decatur, and were attested by the president and a bookkeeper of the bank as well as by Outten. The two former testified on the trial of this cause as well as at the probate, and their testimony tended to sustain the finding of the jury.

Before the stroke of paralysis the testator was a large, strong, vigorous man but afterward he fell off greatly in strength and size, so that from a weight of one hundred and seventy pounds he had been reduced to one hundred and fifteen pounds at the time of his death. After his removal to Decatur there was a progressive failure of his physical and mental capacity. He had difficulty in articulating, and it was therefore difficult for him to make himself understood. He continued to attend to such business as he had and kept an account at the bank, in which he made deposits and on which he drew checks. His sons Clarence and Jeremiah farmed his land, though in the last year of his life he rented it to another tenant. He had litigation with a drainage district in connection with his land. He employed lawyers and testified on two trials in that litigation. He went about town, met his acquaintances from the neighborhood of Dalton City and talked with them about crops and about acquaintances. He was sometimes confused on the streets, lost his way and had to be assisted home. His memory was bad. He sometimes failed to recognize persons whom he had known. He was irritable and peevish. A number of witnesses testified on either side to their belief that he was of sound mind and

that he was not of sound mind during the time he lived in Decatur. The number of such witnesses on each side was about equal. They testified to the circumstances on which their respective opinions were based. The appellants insist that the testimony of the witnesses on their side is entitled to the greater weight. It was the peculiar province of the jury to determine this question, and to decide, from a consideration of all the circumstances shown and the contradictory opinions expressed, on which side was the preponderance of the evidence. A discussion of the evidence in detail could result in nothing more than showing that it was contradictory. The evidence either of the appellants or of the appellees, if considered alone, would perhaps sustain a verdict against the side whose evidence was disregarded, but it cannot be said that there is such a manifest preponderance of the evidence against the verdict which the jury found as would justify a reviewing court in setting it aside.

It is urged that there was error in the giving of instructions. The seventh instruction is as follows:

"In this case, if the jury believe, from the evidence, that the testator, James Grace, was of sound mind and memory, as defined by these instructions, at the time of the alleged execution by him of the paper purporting to be the original will in this case, dated the third day of June, A. D. 1908, they should so find by their verdict, notwithstanding the jury may further believe, from the evidence, that between said date and the date of the paper purporting to be the codicil thereto, dated October 14, 1912, that he, the said James Grace, by reason of old age, sickness or disease had become incapable on said latter date to make a valid will, as defined by these instructions. The jury have the right, under the law, to find that the paper purporting to be the original will and made on June 3, 1908, was and is a legal instrument and was and is the last will and testament of James Grace, deceased, and you

have the right, if you see fit, to determine from the evidence that the paper purporting to be the codicil thereto and bearing date October 14, 1912, was not the last will and testament, or codicil thereto, of the said James Grace, deceased; that is, the jury have the right to find, if they so determine from a consideration of the evidence in this case and the instructions of the court as to the law, that one of the papers is a valid will and the other is not."

It is urged that the instruction is erroneous because it required the jury, in passing upon the codicil, to base their finding upon the evidence, but in passing upon the will said that the jury had the right, under the law, without being limited to the evidence, to find that it was the valid will of James Grace. This is a mistaken view of the instruction. Its intention was to inform the jury, as it did in the last clause, that they had the right to find one of the papers to be a valid will and the other not, if they arrived at such conclusion from a consideration of the evidence in the case. The first sentence told the jury that if they believed, from the evidence, that the testator was of sound mind when he executed the original will they should so find, notwithstanding they might further believe, from the evidence, that before the execution of the codicil he became incapable of executing a will. The jury were then told that they had a right to find the paper purporting to be the original will to be a valid instrument, and also the right, if they so determined from the evidence, to find the codicil not to be valid. It was not necessary to repeat in the second sentence the words, "if the jury believe, from the evidence."

The tenth instruction is as follows:

"The wisdom or lack of wisdom exhibited by the testator of a will from the standpoint of a jury, and whether or not it provides specifically the manner of disposition of the testator's estate in the same way or manner that a jury may think he should dispose of the property, is not

in issue in this case. A person, in the making of a will, has the absolute right to make it in such a manner as he may see fit. He has a right to prefer one child or object of his bounty over another or to make an inequality of his property, as he may see fit. He has a right to do so without assigning any cause or without any cause being shown therefor. And in this case, if you believe, from the evidence, that the testator, James Grace, at the time of the making of said will had sufficient mind and memory to know, understand and appreciate the objects of his bounty and the way or manner in which he wished to dispose of his property by a testamentary disposition in his will and that he knew the nature and amount of his property, he had the legal right to make such disposition as he saw fit. And if you further believe, from the evidence, that at the time of the signing of the codicil in question or the making of the same, that he, the said James Grace, was of sound mind and memory, he had the right to alter or change said will by virtue of said codicil."

The objection made to this instruction is, that the court applied one rule to the mental capacity required to execute the will and a different one to that required to execute the codicil. The instruction does not state two rules. The hypotheses contained in the last sentence and the sentence preceding it are the same. If James Grace's mind and memory were in the condition described in the next to the last sentence then he was of sound mind and memory, as stated in the hypothesis in the last sentence. No complaint is made that the rule stated in regard to his capacity at the time of making the will is not correct and the appellants are not complaining about the finding as to the codicil.

It is urged that the eleventh instruction erroneously told the jury that the certificate of the oath of the subscribing witnesses to the will upon the first probate thereof was *prima facie* proof of the validity of the will. What

has been said in regard to the introduction of the will in evidence disposes of this objection. Counsel for the appellants concede that the instruction states the ordinary rule, and say that had the attesting witnesses not been called it would prevail. If the certificate made a *prima facie* case, the calling of witnesses could not deprive it of that character though their testimony might overcome the *prima facie* case.

The thirteenth instruction is as follows:

"To justify a finding of insanity in the making of a will the evidence must preponderate in favor of unsoundness of mind, and the presumption of sanity must prevail if the evidence is only sufficient to raise a doubt as to such sanity."

It is objected to on the ground that it makes sanity the test as to whether a testator has sufficient mental capacity to make a will. The word "insanity" is used in this instruction as synonymous with unsoundness of mind. It is manifest from the character in which the two expressions are used in the same sentence. The proposition of law is unquestionable. The jury were told in the appellants' instructions that testamentary incapacity did not necessarily require that a person should be technically insane; that weakness of intellect arising from a variety of causes might render a testator incapable of making a valid will. The meaning of the expressions "soundness of mind" and "unsoundness of mind" was fully explained to the jury by the instructions of the court, and it is hardly possible that the jury could have been confused or misled by the use of the word "insanity" in this instruction.

The decree of the circuit court will be affirmed.

*Decree affirmed.*