(No. 16497.—Reversed and remanded.)
EDNA HARRIS *et al.* Plaintiffs in Error, *vs.* WILFORD
ETIENNE *et al.* Defendants in Error.

*Opinion filed February 17, 1925.*

1. WILLS—*what necessary to entitle will to probate.* To entitle a will to be admitted to probate the statute requires that it must be in writing and signed by the testator, or in his presence by someone under his direction, and must be attested by two credible witnesses, who must testify that they saw the testator sign the will or that he acknowledged it to be his act and deed and that they believed him to be of sound mind and memory; and these statutory requirements must be complied with.

2. SAME—*testimony of subscribing witnesses, properly certified to, may be admitted in contest case.* The testimony of the subscribing witnesses, taken orally at probate and properly certified to by the judge of the probate court, may be admitted in evidence on a contest of the will in the circuit court, where the proof shows that although it bears no file-mark it was filed or deposited with the clerk at once after being transcribed.

3. SAME—*attestation clause is not conclusive in a contest case.* Where it is a controverted question in a will contest whether the will was executed in accordance with the requirements of the statute, the attestation clause, being in proper form, is entitled to due weight in determining whether the will was legally executed but is not conclusive.

4. SAME—*what circumstances are indicative of undue influence.* The facts that the chief beneficiary, in the absence of others having equal claim, was active in procuring the will to be made and that the testatrix was enfeebled by age and disease, are circumstances indicating the probable exercise of undue influence, and stricter proof of volition and capacity is required than in other cases.

5. SAME—*when instruction is erroneous in tending to take issues from jury.* In a will contest case, where a fiduciary relation exists, the issues as to mental incapacity and undue influence are controverted, and it is denied that a *prima facie* case of due execution is made, it is error to instruct the jury that the law presumes a person is capable of "disposing of his or her property by will" and that it is the duty of the jury to hold that the testatrix was of sound mind and memory until the contrary is shown by a preponderance of the evidence, as the instruction assumes the due execution of the will and practically takes the issues from the jury. (*Craig* v. *Southard,* 162 Ill. 209, and *Wickes* v. *Walden,* 228 id. 56, distinguished.)

Writ of Error to the Circuit Court of St. Clair county; the Hon. George A. Crow, Judge, presiding.

D. E. Keefe, S. W. Baxter, and H. G. Miller, for plaintiffs in error.

Hilmar C. Lindauer, Maurice V. Joyce, and H. G. Vien, for defendants in error.

Mr. Justice Farmer delivered the opinion of the court:

This writ of error was sued out to review a decree of the circuit court of St. Clair county sustaining the validity of the will of Mary Etienne, deceased. There have been two trials of the case by jury. The first jury found against the validity of the will, and the court set aside the verdict and granted a new trial. The second jury found the writing was the last will and testament of Mary Etienne, and the court, after overruling motion for new trial, entered a decree sustaining the validity of the will and its probate.

The will, after directing the payment of debts, gave to a married daughter, Clementine Jerome, and to each of eight grandchildren, the children of two deceased children, one dollar each. All the rest of her property she bequeathed and devised to her son, Wilford Etienne. The principal value of the estate consisted of land worth, according to the inventory, $7000. The persons mentioned in the will as legatees and devisees were the only heirs-at-law of the testatrix. Mrs. Jerome was a married woman and lived with her husband some distance from her mother, who lived on the farm. The son, Wilford, was a single man and lived with his mother on the land. The bill to contest the will was filed by grandchildren of the testatrix. The will bears date November 7, 1922. A few days prior to that date Wilford went to Frank Reinhardt, a near neighbor, and requested him and his wife to come to the house and witness a will. They did not then go and Wilford came again

with the same request. They went to the testatrix's house and signed the document.

The bill alleges the testatrix did not have testamentary capacity, that the will was procured to be made through the undue influence of Wilford, and that it was never executed in the manner required by law.

The principal questions argued by contestants are, that proponents' proof did not show the will was executed by the testatrix in the manner required by statute for the execution of wills, and that the court erred in the admission of testimony and in giving and refusing instructions.

At the time the paper was executed the testatrix was seventy-six years old, was in bad health and had been for two or more years. She died in February, 1923. In order to entitle a will to be admitted to probate the statute requires that it must be in writing and signed by the testator, or in his presence by someone under his direction, and must be attested by two credible witnesses, who must testify they saw the testator sign the will or that he acknowledged it to be his act and deed, and that they believed him to be of sound mind and memory at the time.

Frank Reinhardt testified in the probate court that it was his genuine signature to the document. When he went to the house of the testatrix the evening of November 7 the will was produced and presented by Wilford. It was folded so that only a line and a half was visible. Wilford said it was a will. The testatrix said she guessed the will would be the last one she would make. She didn't seem to know what was going on. To the best of witness' knowledge and recollection the testatrix did not sign the will in his presence. No one but Wilford asked witness to sign the will. Witness did not know whether it had been signed by the testatrix before he signed it. After witness and his wife signed it they gave it to Wilford. Witness further testified it seemed to him that the testatrix was of sound mind at the time.

Mrs. Reinhardt testified she signed the paper. The testatrix did not ask her to sign it. Her mental condition seemed feeble. Witness saw her writing something at a table but could not see what she was writing. She saw the pen in her hand and a bottle of ink on the table and saw her write. The testatrix said she had made a mistake,—that she made it upside down. Witness could not tell whether she was talking about a signature or about the figure seven. Nothing occurred to lead witness to believe her mind was not all right. She said she guessed that was her last will, or she hoped it was the last one she was going to make. The paper was so folded witness could not see what it was. Wilford produced the paper, and the witness did not know whether the testatrix's name was on it or not. She said something about having written something upside down but guessed it would do. The testatrix did not say it was her last will nor request witness to sign it. She regarded the testatrix as "short-minded" for the last few years before her death. No one lived in the house with the testatrix and Wilford.

The above testimony was heard by the probate court on the application to admit the will to probate. The witnesses did not sign the certificate of an oath but testified orally, and their testimony was taken down in shorthand, transcribed and certified to by the judge of the probate court. Over the objections of contestants it was admitted in evidence on the trial of this contest of the will. Contestants concede it has been held by this court that testimony taken, as the testimony in this case was, in the probate court may be offered in evidence upon a contest of the will, but say since the last case so holding, (*Grace* v. *Grace,* 270 Ill. 558,) section 7 of the chapter on wills has been amended, and that since the amendment such testimony is not competent. We do not think that position tenable. Prior to the amendment the statute provided that the certificate of the oath of the witnesses at the time of probate shall be admitted

as evidence and have such weight as the jury think it may deserve. The amendment added the words that the oath of the subscribing witnesses at the time of the first probate, "properly certified to," shall be admitted in evidence. The testimony of the witnesses was certified to by the judge of the probate court. It bears no file-mark, but the proof shows it was filed or deposited with the clerk at once after being transcribed. In our opinion the court did not err in admitting that testimony.

The statute requires two witnesses to swear they saw the testator sign the will in their presence or that he acknowledged the same to be his act and deed, and that he was of sound mind and memory at the time. Here the will contains an attesting clause signed by the witnesses, which states the testatrix declared to them the paper to be her last will and testament; that she signed the same in their presence, and at her request and in her presence they signed their names to it, and that they believed she was of sound mind and memory. It is indispensable that the statutory requirements must be complied with to make a valid will. The testimony of the witness Frank Reinhardt is that he signed the paper in the presence of the testatrix but to the best of his memory she did not sign it in his presence. No one asked him to sign it but Wilford. The testatrix remarked that she guessed that would be her last will. That is the only remark he heard her make about it. Mrs. Reinhardt testified the testatrix sat at a table with a pen and ink and wrote something,—what the witness supposed was her name. She said something about having written something upside down but she supposed it would do. The testatrix never requested the witness to sign the will as a witness.

Whether the will was executed in accordance with the requirements of the statute was a controverted question. It is true, the will contained a perfect attesting clause, which we have held is entitled to due weight in determin-

ing whether a will was legally executed, (*In re Estate of Kohley,* 200 Ill. 189; *More* v. *More,* 211 id. 268; *Gould* v. *Theological Seminary,* 189 id. 282;) but none of those cases hold the attesting clause conclusive.

Upon the question of undue influence and fiduciary relation between the testatrix and her son, Wilford, briefly stated, the proof shows the testatrix owned the land and she and her son lived on it as their home. No one else lived with them. The proof tends to show,—in fact does show,—Wilford's was the dominant mind and that the testatrix was in fear of him. No one testified he ever abused her, but he drank and was away from home a good deal. The testatrix was unable to do all her work and had washing and housecleaning done by others. She appears to have done most of the cooking, but a near neighbor at times cooked and carried food to her. Wilford attended to his mother's business affairs, such as drawing her money out of the bank on checks and orders from her and selling her Liberty bonds. The proof shows a fiduciary relation existed between the testatrix and her son. Apparently he wanted her to remain at home or when she was ill go to a hospital. A neighbor woman testified she was taking the testatrix to her daughter's in an automobile when they met Wilford, and the testatrix hid herself so he would not see her. Some time in August or September, 1922, the testatrix went to her daughter's, some three or four miles from the testatrix's home. Her health was very poor, and very soon after she went to her daughter's Wilford came with an ambulance to take her to a hospital. When the testatrix saw him she said she did not want to go with him and asked her daughter to hide her. She was not allowed to go with her son. The proof does not disclose who wrote the will, when it was written or who procured it to be prepared. It was a typewritten document and it is evident was not written by the testatrix or her son. It was the son who went to the Reinhardt home and said they were wanted to

315—35

witness his mother's will. The testatrix, advanced in years, was, and had been for a long time, feeble in body and very forgetful. The only activity proved, of any kind, in getting the will executed was that of Wilford, who under the evidence sustained a fiduciary relation to the testatrix. The proof of his activity is that he went twice to the Reinhardts to get them to sign the will as witnesses, and when they went to the house he produced the typewritten document and took possession of it after they signed it. Where the chief beneficiary, in the absence of others having equal claim, is active in procuring the will to be made, and the testatrix is enfeebled by age and disease, it is a circumstance indicating the probable exercise of undue influence, and stricter proof of volition and capacity is required than in other cases. *England* v. *Fawbush,* 204 Ill. 384; *Weston* v. *Teufel,* 213 id. 291; *Purdy* v. *Hall,* 134 id. 298; *Leonard* v. *Burtle,* 226 id. 422; *Berry* v. *Egan,* 291 id. 377; *Blackhurst* v. *James,* 304 id. 586.

The evidence upon the subject whether the will was legally executed and of undue influence was of a character that the jury should have been accurately instructed. On behalf of proponents the court gave the jury the following instruction:

"The court instructs the jury that the law presumes, and it is your duty to presume, that every person who has arrived at the years of discretion is of sound mind and memory, and capable of transacting ordinary business, and capable of disposing of his or her property by will or otherwise, until the contrary is shown; and the court instructs you that, in the first instance, it is your duty to hold that Mary Etienne, at the time she executed the will offered in evidence in this case, was of sound mind and memory, and it is your duty to so hold until you believe, by a preponderance of the evidence, that she was otherwise."

The instruction assumed that the will was executed in accordance with the requirements of the statute and prac-

tically took that disputed question from the jury. We do not decide the merits of that controverted question of fact, but hold that, under the state of the evidence, to take the question from the jury, as the instruction substantially did, was an invasion of its province and erroneous. *Ohio and Mississippi Railway Co.* v. *Thillman,* 143 Ill. 127; *Chicago, Burlington and Quincy Railroad Co.* v. *Griffin,* 68 id. 499; *Allmendinger* v. *McHie,* 189 id. 308.

Proponents call attention to *Craig* v. *Southard,* 162 Ill. 209, and *Wickes* v. *Walden,* 228 id. 56, where a substantially identical instruction was held not to be erroneous. But in those cases there was no controversy over the question whether the will was executed in accordance with the statutory requirements. The grounds of contest were lack of testamentary capacity and that the testator was unduly influenced, and it does not appear that any question of fiduciary relation of the beneficiary was raised. In both cases it does not appear that the contestants denied that proponents' proof made a *prima facie* case of the due execution of the will. The instruction complained of here ignored the question of confidential relationship and undue influence, and practically stated the only question for the jury to determine was whether testatrix possessed sound mind and memory.

The other questions we have referred to were seriously contested and should have been submitted to the jury under proper instructions.

For the error in giving the instruction referred to, the decree is reversed and the cause remanded.

*Reversed and remanded.*