MAGGIE EGAN *et al.* Appellants, *vs.* CARRIE MOELLEN-BROCK, EXRX., *et al.* Appellees.

*Opinion filed October 28, 1926.*

1. WILLS—*what is sufficient to make prima facie case for proponents in will contest.* In a will contest the proponents are not required to produce as witnesses the parties who witnessed the signature of the testator, but under section 7 of the Wills act the certificate of the oath of such witnesses, taken at the probate of the will, may be introduced in evidence, and when such evidence is introduced, covering the points prescribed by section 2 for the admission of wills to probate, the competency of the testator and the execution of the will are *prima facie* established.

2. SAME—*when finding of due execution of will is supported by evidence.* A verdict in a will contest case finding that the will was executed by the testator will not be set aside on the evidence where the proponents have made a *prima facie* case by the introduction of the certificate of the oaths of the attesting witnesses, notwithstanding said witnesses, although they admit witnessing a will for the testator, deny their signatures to the paper introduced by the proponents, testifying that they signed a similar paper and did not examine closely the instrument offered for probate, where the circumstances under which the will was found indicate its genuineness and where the expert testimony is conflicting as to the genuineness of the witnesses' signatures as well as that of the testator.

3. SAME—*when instruction to disregard false testimony is not prejudicial.* In a will contest, where the attesting witnesses deny their signatures to the instrument introduced as the testator's will and testify that they did not closely examine the instrument when

offered for probate and when their oaths were taken to their certificate, it is not improper to instruct the jury to disregard, unless corroborated, the testimony of any witness they believe knowingly to have testified falsely, although the witnesses' explanation of their testimony is not contradicted.

Appeal from the Circuit Court of Madison county; the Hon. J. F. Gillham, Judge, presiding.

M. R. Sullivan, for appellants.

M. Lester Geers, and Cyrus A. Geers, for appellees.

Mr. Justice Dunn delivered the opinion of the court:

The heirs of William Moellenbrock filed a bill in the circuit court of Madison county to contest his will. An issue as to whether or not the instrument of writing produced as the will of Moellenbrock was his will was tried by a jury, which found that it was, and the court entered a decree dismissing the bill for want of equity, from which the heirs have appealed.

William Moellenbrock executed his will on May 7, 1921, in presence of C. A. Kellermann and Theo Kellermann, who signed it as witnesses at his request. The testator died on October 6, 1924, and the will not being found, his widow, Carrie Moellenbrock, was appointed administratrix of his estate by the probate court of Madison county. She had told her attorney, on applying for letters of administration, that she understood there was a will but that she had inquired and searched for it and did not find it. On October 16, at the suggestion of her attorney, an old safe which stood in the hall, in which Moellenbrock kept a few old papers, was opened by Mrs. Moellenbrock, who had the combination card, in the presence of the attorney and of her brother, Joe Vollmer, who was also the husband of Moellenbrock's daughter, Frances. In a little drawer of the safe was found a small sealed envelope bearing the indorse-

ment in indelible lead pencil, "To Carrie Moellenbrock, Personal." This envelope contained the instrument in writing offered for probate as the will of Moellenbrock. It was written with an indelible lead pencil on a leaf taken from a day-book of which the leaf constituted pages 153 and 154, and all the signatures were also written with an indelible pencil. The attorney filed the instrument in the office of the clerk·of the probate court, and on November 17, 1924, it was admitted to probate. The following is a cópy of the instrument:

"GRANITE CITY, ILL. *May 7th, 1921.*

In the name of God Amen
I Wm Moellenbrock make this my last Will and Testament to my dear wife Carrie Moellenbrock I leave all persnal and Real Estate she must pay all debts in one year from date of my· death To my Daughter Francis Vollmer (nee) Moellenbrock $1000. to my daughter Maggie Egan (nee) Moellenbrock $500. to my son Harry Moellenbrock $500.00 and I and I want my dear wife Carrie Moellenbrock to act as Adminestrater, and my two Grandchildren Clarence Bean and Theodore Bean $100.00 each
I am of good sound mind
In the name of God Amen        (signed Wm Moellenbrock
Witness
   (Signed) C. A. Kellermann
           Theo Kellermann."

The testator's heirs were his two daughters, his son and two grandchildren, the children of a deceased daughter. His widow, who was also the executrix of the will, was his third wife and was not the mother of any of his children. She was the sole defendant to the bill.

The sole ground of the contest was that the testator did not sign the will nor did either of the supposed witnesses sign as a witness; that the instrument produced was not the will executed by the testator. The proponent introduced in evidence the will and the certificate of the oath of the attesting witnesses in the probate court. It is argued that this was not sufficient to make a *prima facie* case and that the proponent was required to call the attesting witnesses. Section 7 of the Statute of Wills declares that in

the trial by a jury of the contest of a will the certificate of the oath of the witnesses at the time of the first probate shall be admitted as evidence and be entitled to such weight as the jury may think it deserves. When this evidence has been introduced covering the points prescribed by section 2 for the admission of the will to probate, the competency of the testator and the execution of the will have been *prima facie* established. (*Grace* v. *Grace,* 270 Ill. 558.) The proponent was not required to produce the witnesses to the will. (*Rigg* v. *Wilton,* 13 Ill. 15.) The rule is different on a petition for the admission of a will to probate. *Thompson* v. *Owen,* 174 Ill. 229.

The only question in the case is one of fact: Did the testator execute the will? After the introduction of the oath of the witnesses in the probate court both the witnesses were called and testified denying their signatures and the signature of the testator, and evidence was introduced on each side of the issue. The witnesses to the will were C. A. Kellermann and Theo Kellermann, who were carpenters and were father and son, of the respective ages of sixty-six and twenty-three years. On the date of the will, May 7, 1921, they were building a house near Moellenbrock's house and were boarding with him. C. A. Kellermann knew about Moellenbrock drawing his will. He gave Moellenbrock a form of a will (the heading and body) and told him he could write the will himself. Moellenbrock had asked Kellermann to get a form of a will, and he did so and took it to Moellenbrock,—a sheet of paper with printing on the top and bottom of it. Moellenbrock made a will and called Kellermann and his son, Theo, in to sign it. They signed it on May 7, 1921. The paper Moellenbrock used looked like a sheet taken out of a day-book. It was similar to the paper introduced in evidence as proponent's "Exhibit A," (the alleged will,) but Kellermann testified that he absolutely did not sign "C. A. Kellermann" to that paper; that paper was not the paper that was signed

by him and his son at Moellenbrock's request on May 7, 1921, though it was a paper similar to that. Theo Kellermann, the son, testified that he remembered that his father and he were called into Moellenbrock's house to sign a paper and both signed it, his father first and then Theo. It looked like the paper he was holding while he was testifying. The name "Theo Kellermann" was his name. He signed a paper similar to that, but that was not his signature,—he did not sign that paper. The first time he saw the paper introduced in evidence was in the probate clerk's office about November 17, 1924. He and his father were in the clerk's room, and while they signed the affidavit the clerk showed them the will. He laid it on the desk and had them look at it. Theo did not take any particular notice of it. The clerk asked them whether they were up there to probate this will and swear to the will of Moellenbrock and asked them if they signed it, and Theo told him "yes." He laid the will out there and said, "Is this your signature?" Under the circumstances he paid no attention, because he knew he had signed a will for Moellenbrock, and so naturally he said "yes." His father and he put their names on the bottom of the paper that the clerk made out. They then went to the probate judge. Judge Crossman laid the will right on his desk and asked them whether they had signed the will. They told him they did. He never paid particular attention to it. Nobody up to that time had questioned it.

A number of checks and receipts bearing the genuine signature of the testator, checks bearing the genuine signatures of the Kellermanns and the bank signature card of C. A. Kellermann were introduced in evidence for the purpose of comparison and a number of witnesses testified as experts, some of whom were acquainted with the signatures of the testator and the two witnesses, or some of them, and others who testified from a comparison of the signatures to the will with the instruments introduced as

standards of comparison. One witness, a banker of long experience, who was not acquainted with the handwriting of the parties, was called by the proponent as an expert, and testified from a comparison with the standards introduced in evidence that in his opinion the body of the alleged will was written by Moellenbrock and that the name "Theo Kellermann" was his signature. Theo Kellermann's brother and sister testified from their acquaintance with the signatures of their father and brother that the names signed to the instrument were not their genuine signatures. A greater number of witnesses testified to the signature of C. A. Kellermann than to either of the other signatures. He had kept accounts at various banks for a number of years and probably more persons were acquainted with his signature. A number of witnesses, including several bankers at Edwardsville and other business men who were acquainted with C. A. Kellermann's signature, testified that in their opinion the names attached to the will were not the signatures of C. A. Kellermann and of Moellenbrock. A smaller number, who were also acquainted with the signatures, testified that in their opinion the names signed to the will were the genuine signatures of the testator and the Kellermanns. The witnesses testified, in support of their respective opinions, to resemblances and differences between the supposed signatures to the instrument and the standards of comparison introduced in evidence. The will itself, the oath of the subscribing witnesses in the probate court, and the other standards of comparison which were introduced in evidence, have been certified to us and we have examined them. If the case should be decided on a comparison of signatures alone, that there is much room for difference of opinion is apparent from the contrariety of opinion expressed by the witnesses. In addition to the various signatures and the different opinions of the witnesses who have testified on either side there are some other facts to be taken into consideration.

William Moellenbrock did execute a will about May 7, 1921, which was witnessed by C. A. Kellermann and Theo Kellermann. The terms of it are unknown, because the testator covered the will with his hand while it was attested by the two witnesses. It was written with an indelible pencil on a sheet of paper taken from a day-book. The instrument in question in this case answers the general description of the will actually executed and it is produced from a place where it might reasonably be expected to be found. If the will was found under the circumstances testified to, it is difficult to believe it is other than the will executed by Moellenbrock. When it was offered for probate the witnesses who now deny their signatures appeared in the probate court and after examining the instrument stated that the signatures were their signatures and made the affidavit required for the admission of the will to probate. The will gave the testator's property, except some small legacies given to his children and grandchildren, to his wife, who was not the mother of his children. It did not occur to the witnesses to doubt their signatures until after they were called upon by one of the children who had received only a small legacy. They explained the discrepancy in their testimony on the theory that they did not examine the will closely at the time of the probate; that they took it for granted, as they had witnessed the Moellenbrock will, that the signatures were theirs; that no one had questioned the will but afterward it was questioned, and then they went to the clerk's office, examined the will and then declared the signatures not theirs.

The appellants regard as suspicious the circumstances under which the will was found, but no just ground of suspicion arises from those circumstances as shown by the evidence or the fact that the attorney suggested an examination of the safe to look for the will.

The evidence is conflicting, and it was the province of the jury to determine on which side was the preponderance.

Under the circumstances it cannot be said that the verdict finding that the will was executed by the testator was not justified by the evidence.

The court gave two instructions for the proponent which are objected to; the first, that if the jury believed from the evidence that any witness had knowingly sworn falsely as to any material matter in the case the jury might disregard the testimony of such witness except in so far as it is corroborated by other credible evidence; and the second, that one of the modes of impeaching a witness is by showing that he has made statements at a different time and place at variance with his statements on the witness stand, and if the jury believed from the evidence that any witness had made statements at another time and place at variance with his testimony in this case, concerning material matter testified to by him, then it was the province of the jury to determine to what extent this tended to impeach either his memory or his credibility to detract from the weight which ought to be given to his testimony. It is said that while these instructions might have been a correct statement of the law, yet under the circumstances of the case and the uncontradicted testimony of the Kellermanns as to how their signatures were obtained in the probate court the instructions were vicious, and that while it may be a correct statement of the rule, the use of the expression "knowingly sworn falsely" was erroneous under the evidence in the case, as the explanation given by the attesting witnesses as to what occurred in the probate court was without contradiction. It is the province of the jury to determine whether, under all the circumstances in the case, the explanation of the witnesses as to their testimony in the probate court was satisfactory, and to determine, in view of all the circumstances, as to whether the testimony of the witnesses was knowingly false or not. There was no error in giving the instructions.

The decree is affirmed.  *Decree affirmed.*