(No. 28196.—

ARTHUR SPANGLER *et al.*, Appellants, *vs.* EARL N. BELL *et al.*, Appellees.

*Opinion filed March 21, 1945—Rehearing denied May 17, 1945.*

JOHN W. WILLIAMS, and EDWARD C. MACK, both of Carthage, for appellants.

CHARLES J. SCOFIELD, and EDWARD S. MARTIN, both of Carthage, for appellees.

Mr. Justice Thompson delivered the opinion of the court:

Mary J. McDonald, a widow, died on July 20, 1943, leaving a will dated November 15, 1938, and a purported codicil dated July 22, 1939. The will was admitted to probate by the county court of Hancock county. No appeal has been taken from this order. The codicil was denied admission to probate and record. The circuit court of Hancock county, after a hearing *de novo,* found that the codicil was not signed by the testatrix, or by anyone in her presence and by her direction, in the presence of the subscribing witnesses; that she did not acknowledge to them that the execution of the instrument was her act; that the subscribing witnesses did not sign their names to the instrument in the presence of the testatrix; and, consequently, that the instrument was not duly executed as, and was not, a codicil to the will of Mary J. McDonald. Accordingly, it was ordered that the petition for the probate and record of the codicil be dismissed, and that its probate and record be denied and refused. Arthur Spangler and five others, proponents of the purported codicil, have prosecuted an appeal to this court, a freehold being involved.

The codicil which is involved in this litigation was prepared in the office and under the supervision of J. Arthur Baird, county judge of Hancock county. It was typewritten by his stenographer, Dorothy Spangler. This instrument was signed by Mary J. McDonald, and the attestation clause attached thereto signed by Otis G. Bray and Edward B. Hackett as witnesses. Neither the genuineness of these signatures nor the testamentary capacity of the testatrix is questioned. The sole question presented by this appeal is whether the codicil was signed or acknowledged by the testatrix in the presence of the subscribing witnesses, and by them attested in her presence, in accordance with the statutory requirements necessary to the due execution of a will.

Section 2 of the Wills Act, (Ill. Rev. Stat. 1939, chap. 148, par. 2,) which was in force and effect on the date of the codicil, provided that all wills, testaments and codicils shall be reduced to writing and signed by the testator or testatrix, or by some person in his or her presence and by his or her direction, and attested in the presence of the testator or testatrix by two or more credible witnesses, two of whom shall declare on oath before the county court of the proper county that they were present and saw the testator or testatrix sign the will, codicil or testament in their presence or acknowledge the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing and acknowledging the same. This statute was subsequently repealed by the Probate Act, (Ill. Rev. Stat. 1943, chap. 3, par. 500,) which became effective January 1, 1940, but the requisite formalities prescribed by that act, pertaining to the signing and attestation of wills and codicils, are the same as those required under the former Wills Act. *Bronson* v. *Martin,* 384 Ill. 129.

The right to dispose of property by will is purely statutory, and subject to the regulation and control of the legislature. The statute relating to the manner of execution of wills is mandatory and must be complied with. (*Brelie* v. *Wilkie,* 373 Ill. 409; *Walker* v. *Walker,* 342 Ill. 376; *Landry* v. *Morris,* 325 Ill. 201; *Harris* v. *Etienne,* 315 Ill. 540.) On the hearing on the proof of the will in the probate court, the proponents are limited to the testimony of the attesting witnesses to establish the will and the contestants are limited to cross-examination of such witnesses; (*Shepherd* v. *Yokum,* 323 Ill. 328; but at the hearing on appeal in the circuit court the due execution of the will may be established by any evidence competent in chancery for that purpose. Ill. Rev. Stat. 1943, chap. 3, par. 223; *Schaefer* v. *Mazer,* 359 Ill. 621.

In this case, the evidence is in irreconcilable conflict upon the question whether the testatrix signed or acknowledged the codicil as her act and deed in the presence of the subscribing witnesses and was present when the codicil was signed by such witnesses. These attesting witnesses and Judge Baird were the only persons who testified as to the signing of the codicil. Judge Baird testified that in the fall of 1938, while he was in Mrs. McDonald's home electioneering for the office of county judge, she told him that she wanted him to draw a will for her some day; that, thereafter, on the morning that the codicil was executed she came to his office about nine o'clock, accompanied by Harry Spangler, (the father-in-law of Judge Baird's stenographer and one of the proponents of the purported codicil,) who said that the testatrix, or "aunt Mary," as he called her, wanted to see him about making a will; that she took from her "hand satchel" her will and also a scrap of paper on which she had written the changes she wished made in her will and handed them to the witness; that after discussing the matter with her, he called his stenographer, Dorothy Spangler, told her to write the codicil and dictated to her the attestation clause; that when it had been completed by the stenographer and read to and approved by the testatrix as being what she wanted, he, with Mrs. McDonald's approval and at her request, called Edward B. Hackett on the phone and asked him to bring Otis Bray and come over to act as witnesses to Mrs. McDonald's codicil. Judge Baird's office, consisting of two rooms, was on the second floor of the Hancock county court house. One of these rooms is called by Judge Baird his private chambers and is north of and connected by a door with the other room, which is occupied by his stenographer. The county court room adjoins these rooms on the west and there is a door in each room opening into the court room. Judge Baird testified that when Bray and Hackett came

to his office they passed through his stenographer's room into his private chambers; that it was then about eleven o'clock in the morning; that Mrs. McDonald told them she wanted them to witness her will; that she signed the codicil in their presence; that all of the doors of his office were closed at the time and no one was present except the testatrix, the two subscribing witnesses and himself; that he read the attestation clause to the two witnesses and the codicil was signed by them in Mrs. McDonald's presence; and that all three of them, when they left, went out through the stenographer's room on the south.

The subscribing witnesses, Hackett and Bray, both testified that they signed the codicil in the county court room; that no one was present at the time except themselves and Judge Baird; that he asked them if they were acquainted with Mrs. McDonald, showed them the codicil, and said it was her request that they sign it; that they were not in either Judge Baird's chambers or in his stenographer's office on that day; that they did not see the testatrix sign her name to the codicil and did not see her at any time that day. The witness Bray testified that the door from the court room into Judge Baird's chambers was open at the time and he saw that no one was in there. Counsel for proponents endeavored to and did elicit from the witness Hackett the admission that the testatrix might have been present and the witness not seen her; and they argue from this that he is indefinite in his recollection of what actually took place, and therefore his testimony should not be received to impeach the presumption of the codicil's due execution arising from the attestation clause. However, it is obvious from a reading of his testimony that he wished to be understood as stating that Mrs. McDonald was not present at the time the witnesses signed the codicil; and it is also obvious that any statements which he made, while testifying, to the effect that she might have been present or that he did not know whether or not she was present

were made by him at the instigation of counsel and purely out of an abundance of caution, and not because he was uncertain whether or not she was present. This was shown by his testimony immediately afterward, when he said: "I remember distinctly what went on. Otis Bray, Judge Baird and I were the only ones there."

It is contended by appellants that the testimony of the subscribing witnesses, Hackett and Bray, is not to be credited and should not have been considered by the court, for the reason that it is in conflict with their attestation. Counsel for appellants argue that since the codicil bears the genuine signatures of the testatrix and the subscribing witnesses, the attestation clause is *prima facie* evidence of the due execution of the codicil, which cannot be overcome by the contradictory testimony of said witnesses; and that such attestation clause, together with the evidence of Judge Baird, establishes that the testatrix signed the codicil in the presence of Hackett and Bray, and that they then signed the same in her presence as attesting witnesses. The attestation clause in the present case recited that the testatrix had signed, sealed and declared the instrument as her codicil and that the witnesses had signed the same at her request, in her presence and in the presence of each other. Appellees say that as the attestation clause recited merely that the instrument had been "signed, sealed and declared" by the testatrix as her codicil, and failed to state that the same was so done in the presence of the subscribing witnesses, no presumption to that effect can be indulged in, and that the attestation clause is therefore not *prima facie* evidence of the due execution of the codicil.

The law governing the manner of execution of wills and the character and quantity of evidence required for their probate and admission to record has been frequently announced by this court. It is not indispensable that the witness should subscribe to any formal clause of attestation. Neither a formal attestation clause nor even words

in addition to the signatures of the witness are prerequisites to a valid execution of a will. (*Barber* v. *Barber,* 368 Ill. 215; *Cunningham* v. *Hallyburton,* 342 Ill. 442; *Calkins* v. *Calkins,* 216 Ill. 458; *Robinson* v. *Brewster,* 140 Ill. 649.) In *Brelie* v. *Wilkie,* 373 Ill. 409, and in *Mead* v. *Presbyterian Church,* 229 Ill. 526, there was held to be a presumption of proper execution even though there was no attestation clause, the attestation being merely by subscription, together with the word "witnesses." While two of the attesting witnesses to a will or codicil must, except in certain instances enumerated by the statute, (Ill. Rev. Stat. 1943, chap. 3, par. 226,) testify before the probate court to the due execution of the will or codicil before the same shall be admitted to probate by that court, (Ill. Rev. Stat. 1943, chap. 3, par. 221,) the law does not, upon appeal to the circuit court, thus leave a will or codicil entirely dependent upon the testimony of the subscribing witnesses, (Ill. Rev. Stat. 1943, chap. 3, par. 223;) and even though some or all of them may appear and testify adversely, the instrument may nevertheless be established by evidence *aliunde* competent to establish a will in chancery. The fact to be established is the proper execution of the will. If that is proved, it is sufficient, no matter from what source the evidence may come. The inquiry is whether the valid execution and attestation of the will has been established by a preponderance of all the competent evidence. (*Landry* v. *Morris,* 325 Ill. 201.) An attestation clause reciting due execution of a will is entitled to weight in determining whether the will has been legally executed, but it is not, however, conclusive. (*Landry* v. *Morris,* 325 Ill. 201; *Harris* v. *Etienne,* 315 Ill. 540.) Under some circumstances, such an attestation clause has been held to prevail over the contradictory testimony of a subscribing witness. (*In re Estate of Elkerton,* 380 Ill. 394; *Szarat* v. *Schuerr,* 365 Ill. 323.) The rule is that the testimony of subscribing witnesses impeaching a will is to be viewed with sus-

picion and received with caution. (*In re Estate of Elkerton*, 380 Ill. 394.) It is also true that in some cases this court has severely criticized subscribing witnesses who testify in opposition to the probate of a will, but the record in this case does not justify such criticism. The subscribing witnesses in this case were men of good standing in the community, entirely disinterested in the result of the suit, and with no motive whatever to testify to anything other than the truth. They were laymen, unfamiliar with the laws relating to wills. Bray had never been a witness to a will or codicil before. Hackett testified that he had previously signed as a witness to two other wills, but that he never gave it a thought whether it was necessary for a party making a will to be present when it was attested by the witnesses. It is reasonable to believe that they would sign the codicil in the absence of Mrs. McDonald, when directed to do so by Judge Baird, and reasonable that they would assume, because he so directed them, that her presence at the time, as recited in the attestation clause, was not necessary. The question of the weight to be given the testimony of a subscribing witness in contradiction of the attestation certificate signed by him depends upon the credibility of the witness and the circumstances of each particular case. (*Kuehne* v. *Malach,* 286 Ill. 120; *In re Estate of Kohley,* 200 Ill. 189.) The trial judge saw and heard the witnesses and gave greater weight to the testimony of the witnesses Hackett and Bray than to the evidence contradicting their testimony. Since it does not appear from the record that this conclusion as to the weight of the evidence is clearly wrong, the order of the circuit court must be affirmed.

*Order affirmed.*