KATE E. RAY et al. Appellees, vs. OTTO VON KOENIGS-MARCK et al. Appellants.

*Opinion filed April 21, 1928.*

1. WILLS—*what undue influence will invalidate a will.* Undue influence may be proved by circumstances, but to invalidate a will the influence must be specially directed to procuring the will in favor of particular parties, it must be operative at the time of the transaction, and the will must be made as the result of such influence and not as the free will of the testator.

2. SAME—*what does not render testatrix incompetent to make a will.* Physical and mental weakness due to old age will not necessarily render one incompetent to make a will, and although a woman may be physically and mentally weak, if she has sufficient mental capacity to knowingly and understandingly dispose of her property by will and distribute it to those to whom she intends it to go she is competent to make a will.

3. SAME—*what is not undue influence.* Influence over a testator or testatrix gained by affection and friendly attention is not regarded in law as undue influence.

4. SAME—*fiduciary relation does not, alone, raise presumption of undue influence.* A fiduciary relation, alone, does not raise any presumption of undue influence, but that presumption arises only from the fact that the dominant party was directly connected with the making of the will.

5. SAME—*when testimony of subscribing witness should be received with caution.* The testimony of a subscribing witness who seeks to impeach the will should be received with caution, particularly when the weight of the evidence is against his testimony, which is conflicting in itself.

6. SAME—*what remark of court in ruling on testimony is improper.* In a will contest, the court, in ruling on the admissibility of evidence on the subject of undue influence, should not remark, in the presence of the jury, that whatever influence was used, if it was undue or improper influence, was admissible in evidence.

APPEAL from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

WILLIAMSON, BURROUGHS & SIMPSON, for appellants.

C. W. BURTON, for appellees.

Mr. COMMISSIONER PARTLOW reported this opinion:

Appellees, who are nieces and nephews of Mrs. T. E. Perley, filed their bill in the circuit court of Madison county to contest her will on the grounds of her mental incapacity and the undue influence of her son-in-law, Count Otto von Koenigsmarck, who will be referred to as appellant. A jury returned a verdict in favor of appellees, but a new trial was granted. On the second trial the jury found that the testatrix was mentally sound but that she had been unduly influenced by appellant. A decree was entered setting aside the will, and an appeal has been prosecuted to this court.

The will, which disposed of all of the testatrix's property, real, personal and mixed, was executed January 17, 1916, at Hanau, a village about fifteen miles from Frankfort, Germany, and by its terms the testatrix left all of her property to her daughter, Leila, Countess von Koenigsmarck, provided the daughter outlived the testatrix. In case the daughter did not outlive the testatrix the property was to go to the daughter's husband, appellant herein. The

daughter died January 28, 1916, eleven days after the will was executed, and the testatrix died February 14, 1916, twenty-eight days after its execution.

The evidence shows that the testatrix was about eighty-three years old at the time the will was executed. She had formerly lived at Alton, Illinois. About 1905 her only child, a daughter, Leila, married appellant. Immediately after the wedding the testatrix sold her home in Alton and moved with her daughter and appellant to Darmstadt, Germany, where they resided until the death of the testatrix. She had some money invested in American securities. She left some of her stocks and bonds with C. A. Caldwell, president of the Alton National Bank, who was named executor of the will. She gave him directions from time to time as to how her investments should be made. She maintained a checking account in a bank in Germany. During the World War appellant was a major in the German army and was wounded in action. After he recovered, in October, 1915, he was made commandant of Hanau, a town of 50,000 people. He and his family removed temporarily to that town so he could be close to his employment and near the hospital in Frankfort, where his wife was seriously ill for several months before her death. In April, 1915, the testatrix was operated upon for cancer of the breast and the operation was only partially successful. At the time the will was executed she was ill and a part of the time was confined to her bed. Appellant had a military servant, Victor Frank, who was a private in the German army. He lived in appellant's household for fourteen days while the family was at Hanau. Two servant girls, Otillia and Marie Kolb, who were sisters, were employed in the family. At the time the will was executed the household consisted of appellant, the testatrix and the three servants. Prior to the will in question another will had been executed by the testatrix, the provisions of which do not appear in evidence. On account of the impending death of appellant's wife it was decided to

execute the will in question. On the day it was executed all of the members of the household were present. About 1:30 o'clock P. M. appellant informed the three servants that the testatrix wanted them to come into the dining-room. She had been in bed during the morning, but she dressed and came from her bed-room into the adjoining dining-room. The will was in her handwriting and was lying on the dining-room table and had been signed by her. The three servants came into the dining-room from the kitchen and the will was executed, with them as witnesses. There is a conflict in the evidence as to whether appellant was present when it was signed. Frank testified that he was present, and Otillia Kolb testified that she did not know whether he was there at that time. Immediately after the will was signed it was delivered to appellant.

No cross-errors have been assigned on the question of the mental ability of the testatrix to execute the will, so the only question before this court is that of undue influence. The charge of undue influence as alleged in the bill is, that about two and one-half years before the making of the will a state of war was declared between Germany and the allied powers; that during that period the people of Germany were greatly embittered and filled with hatred toward the United States; that the testatrix became greatly influenced by the German people, and especially by appellant, and was unduly prejudiced against all Americans, and especially against appellees; that she had insane delusions on that subject which rendered her totally unfit, mentally, to make a valid will; that shortly prior to the making of the will appellant was wounded in battle, which tended further to prejudice the testatrix; that appellant took advantage of the situation and the mental and physical condition of the testatrix and improperly and fraudulently urged her to make a will and give her property to him; that he had the will prepared, procured the witnesses and unduly influenced the testatrix to execute it; that he was present at the time

of the writing and execution of the will; that he failed to notify appellees of the condition of the testatrix or that a will was about to be executed, although he knew she was greatly attached to appellees and had kept in touch with them; that appellant made false and fraudulent representations to her about appellees, declaring that they were alien enemies; that they were aiding and abetting the British and French; that they were extravagant and vicious in their methods of living; that while the will named the daughter as beneficiary, she was at that time ill and almost certain to live but a short time; that appellant occupied a confidential relation to the testatrix and controlled her affairs, and by reason thereof procured the execution of the will.

When the will was admitted to probate the depositions of Victor Frank and Marie Kolb, two of the subscribing witnesses, were taken in Germany before H. W. Harris, Consul General of the United States. They both testified to all of the facts necessary to prove its due execution. They both testified that the testatrix asked each of them to sign as witnesses, and that at that time her mind and memory were very good. Frank further testified that he not only saw the testatrix sign the will but he also saw her write the document itself. In the certificate attached to the depositions the Consul General certified that in taking the depositions a clerk in the consulate familiar with the English and German languages acted as interpreter from the English language, in which the depositions were written, into the German language.

H. H. Huett, cashier of the Alton National Bank, testified that the will was in the handwriting of the testatrix. He also identified nine exhibits as being in her handwriting. They were written in the latter part of 1915 and the first part of 1916. Six of them were to C. A. Caldwell, president of the bank, relative to business matters and the illness and death of the daughter. One was to Kate E. Ray, one of the appellees. One was to the German bank in which

the testatrix kept her deposit. One, dated Hanau, February 8, 1916, was to appellant and was in response to a letter from him to the testatrix. It was a letter of sympathy over the death of his wife. In part it said:

"Try to endure the present and time will help you. The sorrow falls on me as well as you, and I am trying for your sake to make the best of it I can. When you return and have much to do I hope you will be more able to bear your burden. * * * I can be helped to the court room and will do what is required. Now try, for our darling's sake, who loves you yet, I am sure, and is watching over us both and wishes us to be as nearly reconciled as possible. My love to your mother. I shall try to be well before you come and I will be very glad to see you.
                              "Your devoted     °
                                                    MAMA."

H. W. Harris testified that he was Consul General at Frankfort, Germany, from 1912 to 1917. He met the testatrix in 1915 on two or three occasions. She was a woman of intelligence and had a very clear mind for one of her age. He was in her home in Hanau three or four times within three weeks or a month. She gave him a book which she had written relative to the middle west. She told him she intended to make a will. She showed him an instrument in her own handwriting which resembled or was the will in question. He read it in her house in Hanau. She said she had decided to make her will in that form. She referred to appellant in highly favorable terms. She said she was very fond of him and believed her daughter had made a fortunate marriage with him. He saw her last within ten days of her death. Mrs. Harris, the wife of the Consul General, testified substantially the same as her husband. She testified that when appellant came back to the house from the hospital immediately after the death of his wife his meeting with the testatrix was very tender; that she was with her husband when the testatrix showed her a copy of the will before it was executed.

Otillia Kolb was called as a witness for appellant. She testified that she had lived in the household of appellant

329—38

and the testatrix at various times since 1909, the last time being from December 24, 1915, to January 28, 1916, while they were living at Hanau; that the testatrix was ill and in bed a great deal of the time after December 24, 1915; that the testatrix spoke to her about making a will several days before it was executed. The testatrix said she wanted her property to go to her daughter, and if the daughter did not survive the testatrix she wanted her son-in-law to be her heir. On the day the will was executed the three servants were in the kitchen. After dinner appellant came to the door and said the testatrix wanted them to come into the dining-room. They went into the dining-room and the testatrix said she had drawn up her will. She translated it to them and asked them to sign it as witnesses, which they did. She testified that she did not see appellant in the room while the will was being signed. He was dressed ready to go out when he called them. He did not give any directions to anyone as to how the will should be signed and did not ask them to sign as witnesses.

Victor Frank was called as a witness for appellees. He testified at both trials and his deposition was taken when the will was probated. He lived at the testatrix's house in Hanau for fourteen days. At the time the will was executed five persons were present. The paper, ink and pens were brought into the room by appellant. He could not tell whether the will itself had been signed when he first saw it. He testified that it was signed by the testatrix just at the time he entered the dining-room. Appellant was in the room, standing by the testatrix. Appellant and Frank led the testatrix to the table because she could not walk very well, and Frank then went into the kitchen. He testified that the day the will was signed appellant said to him, "This afternoon the will of Mrs. T. E. Perley will be signed." At a prior time appellant told him that the will would have to be re-written because his wife was very sick. He testified that at the time the testatrix signed the will she was phys-

ically and mentally weak. She was in bed most of the time for ten or twelve days before the will was signed. She talked to the witness, prior to the signing of the will, about the sickness of her daughter and about the war. She was angry about the war because America joined in the war and furnished ammunition. She said it wasn't nice on the part of America to enter the war, and she intended to write to the President about it and would write to her relatives. He testified that he heard appellant talk to the testatrix about America furnishing ammunition to the allies. Appellant said he wanted to know nothing more of America. The subject of America sending ammunition to the allies was often talked about between appellant and the testatrix. He was asked to state whether or not, in the presence of the testatrix, he ever heard appellant express himself with regard to America sending ammunition. He answered that appellant scolded about it and said it was very low-down on the part of America to do this. Objections to these questions and answers were overruled, and in making the ruling the court made a statement, in the presence of the jury, giving his reasons for his ruling, which was objected to by appellant. The witness testified that appellant asked him to sign the will and said the date must be inserted; that when the will was signed the mind of the testatrix was not as good as it might be; that she was broken down physically and mentally; that after the death of the testatrix he made a deposition in the English language before the American consul to prove the will; that he could not read English and did not remember whether the deposition was read to him. On cross-examination he testified that on the first trial he did not testify that appellant made any remarks about the United States, or that appellant scolded the testatrix about America, or said anything about selling ammunition; that he was not asked about these matters. He testified that some of the questions in his deposition to probate the will were translated to him into German, but he could not

remember whether all of them were translated; that when the will was signed he was standing in the room with the testatrix. He was asked if on the former trial he was not asked if it was not true that when the testatrix signed the will she was in her right mind and knew what she was doing. He answered that he did not remember. He was asked if to that question he answered that at the time the will was signed he was in the next room and did not watch her and did not see her face. He replied that he never made that answer. He testified that on the former trial he said the testatrix was pretty sick when she signed the will and could not get up, but whether she was of good mind he could not say. He testified that the testatrix had to be friendly towards appellant; that if he said anything it had to be done; that he was good to her; that she was friendly to appellant and very accommodating, and whatever he said she would consent to. An objection was overruled to the answers.

The court reporter who took the evidence on the first trial testified that he could speak the German language and acted as interpreter for Frank at the first trial, and that Frank then testified that he was positive that he never signed any other paper for the testatrix; that he also testified that at the time the will was signed he was in the next room and did not watch the testatrix—did not face her.

After Frank was excused from the stand both sides rested their case. The next morning he was recalled by appellees. He testified, over objection, that a day or two before the will was signed the testatrix told him that appellant wanted a new will made because the countess was very ill; that if anything happened this money would all be sent to America and appellant would receive nothing; that she said she had poor relatives in America and they should receive some of this money. He testified that two days before the will was signed appellant told him that the testatrix must sign for him another will, because she was

becoming more ill every day and he knew not what might happen. On cross-examination he testified that the evening before, after court had adjourned, he went to the office of counsel for appellees. One of the attorneys had a transcript of his evidence on the former trial and talked to Frank about his former evidence. Frank was then asked if on the day before he had said that he had told all he knew about the will and its execution. He replied that he did not understand. He was then asked if on the former trial he did not testify that appellant said that if the testatrix did not make a will all of her money would go to the United States and appellant would get none of it, and he answered that he could not remember. Appellant made a motion to exclude this evidence, and the court excluded the evidence about appellant scolding the testatrix about making a will, about her poor relatives in America, and some other statements made the day before.

In rebuttal appellant offered the answer to question 11 in the deposition of Paul Sander, one of the officers of the German bank in which the testatrix kept her checking account. The answer was that Sander had often spoken to the testatrix concerning political matters; that about France and England she never expressed an opinion but that she was an enthusiastic American, and told him what Washington would have done under the circumstances in the different phases of the World War, and in connection therewith she criticised the German army leadership.

The question for determination is whether the evidence shows that appellant unduly influenced the testatrix to execute the will in his favor by the methods alleged in the bill. The jury found that the testatrix was of sound mind. If she was of sound mind she had a right to dispose of her property as she saw fit, provided she acted freely and voluntarily and without any undue influence from appellant. The undue influence which will invalidate a will must be influence which is specially directed to procuring the will

in favor of particular parties. It must be operative at the time of the transaction, and the will must be made as the result of such influence and not as the free will of the testator. Undue influence may be proved by circumstances. (*Blackhurst* v. *James,* 304 Ill. 586.) Physical and mental weakness due to old age will not necessarily render one incompetent to make a will. Although a woman may be physically and mentally weak, if she has sufficient mental capacity to knowingly and understandingly dispose of her property by will and distribute it to those to whom she intends it to go she is competent to make a will. (*Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578; *Pooler* v. *Cristman,* 145 id. 405.) Influence over the testatrix gained by affection and friendly attention to her is not regarded in law as undue influence. (*Waters* v. *Waters,* 222 Ill. 26; *Bevelot* v. *Lestrade,* 153 id. 625.) A fiduciary relation, alone, does not raise any presumption of undue influence, but that presumption arises only from the fact that the dominant party was directly connected with the making of the will. *Teter* v. *Spooner,* 305 Ill. 198.

If the decree setting aside this will is sustained it must be upon the testimony of Victor Frank. Outside of his evidence there is very little, if any, testimony to sustain the decree. There are certain facts that are undisputed. It is undisputed that the testatrix had lived in appellant's family in Germany for almost eleven years, and during all of that time their relations had been not only friendly but they had been affectionate. This fact is established not only by the evidence of witnesses of no uncertain character, but her letter of February 8, 1916, to appellant also establishes that fact. It is also undisputed that she was desirous of making a will, and told at least three witnesses of her intention to execute the will in question, including Mr. and Mrs. Harris. She showed Mr. and Mrs. Harris the will which she intended to execute and told them she had decided to execute it in that form. The will which she executed has been

certified to this court for our inspection, together with certain other exhibits. The evidence shows that the will was in the handwriting of the testatrix. This is apparent when it is compared with the nine letters which she wrote to various parties.

Even if the evidence of Victor Frank be taken as true and full faith and credit be given to everything he said, it is doubtful whether it establishes such undue influence as was sufficient to set aside the will under the rules as laid down by this court in a long line of cases. We do not think, however, that it is necessary for us to determine that question. From a careful reading of the evidence of this witness we are convinced his evidence should not be taken as true and that it is not entitled to full faith and credit. It is full of contradictions and mis-statements. The testimony of a subscribing witness who seeks to impeach the will should be received with caution, particularly when the weight of the evidence is against his testimony, which is conflicting in itself. (*Jenkins* v. *White*, 298 Ill. 502.) In his deposition taken for the purpose of admitting the will to probate, Frank swore that the testatrix asked him to sign the will as a witness, that he saw the testatrix sign it and saw her write the instrument itself, and that at that time her mind and memory were very good. On this trial he testified that appellant asked him to sign it as a witness; that he could not tell whether the will had been signed by her when he first saw it; that it was signed by her just at the time he entered the dining-room; that after he helped her into the dining-room from her bed-room he went into the kitchen; that at the time she signed the will she was mentally and physically weak and her mind was not as good as it might have been; that she was broken down, physically and mentally. On the first trial he did not testify that appellant made any remarks about the United States, or that he scolded the testatrix about America, or that he said anything about America selling munitions to the allies. He

testified to all of these facts on the second trial, and his only excuse for not testifying about them on the first trial was that he was not asked about them. On the second trial he was asked if he did not testify on the first trial that at the time the will was signed the testatrix was in her right mind and knew what she was doing, and he answered that he did not remember. He was asked on the second trial if he did not testify on the first trial that at the time the will was signed he was in the next room and did not watch her—did not see her face. He denied making the answer, and the court reporter was called to prove that he did make the answer. After all the evidence had been closed Frank was called to the stand the next morning and testified to certain facts which he had failed to say anything about in his prior examination, although just before leaving the stand on the evening before, he had stated under oath that he had told all he knew about the case. From all of these contradictory statements we are forced to the conclusion that Frank was not a credible witness and that very little confidence should be placed in anything he said.

When Frank's evidence is viewed in connection with certain errors of which complaint is made we think the decree should be reversed. Over objection he was permitted to testify that the testatrix was angry about the war because America joined in the war and furnished ammunition; that appellant scolded her about America furnishing ammunition; that she scolded about this and was influenced by it; that she was very friendly to appellant and very accommodating; that whatever he said she would consent to; that she had to be friendly to him. A part of this evidence was later excluded. In ruling on this evidence the court re-marked, in the presence of the jury, that whatever influence was used, if it was undue, if it was improper,—no matter whether it was war, marriage or business,—it was admissible; that if the appellant influenced the testatrix's mind against her American relatives by means of working this

war proposition on her mind the evidence was admissible. This remark should not have been made in the presence of the jury, and the court should not have permitted the witnesses to testify to their conclusions but should have required them to testify to specific facts. The fact that some of this improper evidence was later excluded did not remove from the minds of the jury the effect of the testimony which had been previously admitted.

For the errors indicated the decree of the circuit court will be reversed and the cause remanded.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is rendered in accordance therewith.

*Reversed and remanded.*