(No. 13508.—Reversed and remanded.)

MAYMIE BLUE JENKINS, Exrx. Appellant, *vs.* HENRY WHITE, Appellee.

*Opinion filed June 22, 1921.*

1. WILLS—*will itself is corroborative proof of its due execution.* In a proceeding for probate, the will itself, with its various provisions and the manner and place of those provisions on the pages, is corroborative proof of its due execution and that no part of it is a forgery.

2. SAME—*attesting witnesses need not see signature of testator or know that the instrument is a will.* The statutory requirement is satisfied if the testator acknowledges execution of the will, and it is not necessary that the attesting witnesses see the signature of the testator upon the face of the will, or that an acknowledgment of the signature be made to them by the testator, or that they know that the instrument is a will.

3. SAME—*attesting witnesses need not sign in presence of each other.* The statute does not require that the attesting witnesses be in the presence of each other when they sign the will.

4. SAME—*testimony of one attesting witness that all requirements were not complied with will not overcome prima facie case of due execution.* Where the attestation clause is in due form and the will bears the genuine signatures of the testatrix and the subscribing witnesses there is *prima facie* evidence of the due execution of the will; and this *prima facie* case will not be overcome merely because one of the subscribing witnesses testifies that only one page of the will was in her presence and that all the requirements were not complied with.

5. SAME—*when testimony of subscribing witness should be received with caution.* The testimony of a subscribing witness who seeks to impeach the will should be received with caution, particularly where the weight of the evidence is against her testimony, which is conflicting in itself and positively contradicted by two other witnesses, who appear to be credible.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

WARD & FARRELL, for appellant.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Maymie Blue Jenkins, in her own right, appealed to the Appellate Court for the First District from an order of the circuit court of Cook county affirming the action of the probate court of said county in refusing to admit to probate the last will and testament of Margaret B. Williams, deceased, a colored woman. The Appellate Court transferred the cause to this court for want of jurisdiction in that court, a freehold being involved.

Testatrix died in the city of Chicago on January 9, 1919. She executed her will February 27, 1917. The will consisted of three typewritten pages, and was drafted at the request of the testatrix by Ralph G. Crandall, a practicing attorney at law in Chicago since 1911 and who was assistant corporation counsel for the city of Chicago at the time that he drafted the will. The will consists of four clauses, preceded, respectively, by the words, "First," "Second," "Third" and "Fourth." The first, second and fourth clauses are single paragraphs, of one sentence each. The third clause consists of three provisions, numbered, respectively, by the numerals 1, 2 and 3. The first and second clauses and a part of the first provision of the third clause are written on the first page of the will. A part of the first provision of the third clause and the second and third provisions of that clause are written on page 2 of the will. The fourth clause and the attesting clause, including the signatures of the testatrix and of the attesting witnesses, are completely written on the third page.

By the first clause of the will the testatrix directed all her just debts and funeral expenses be paid out of her personal estate by her executrix. By the second clause she bequeathed to her brother, Henry White, a legacy of $200. The first provision of the third clause is a devise of twenty-two feet of lot 22, block 5, in Oakwood subdivision of the north half of the south half of the northeast quarter

of section 22, township 38, north, range 14, Chicago, with
the buildings and improvements thereon, subject to incum-
brances, if any, at her death. This provision concludes at
the top of page 2 of the will, and devises three and a quar-
ter acres in lot 32 in the San Diego Eucalyptus Company's
tract No. 1, being a subdivision of part of the "P" tract
rancho El Cajou, in the El Cajou valley, in San Diego
county, California. The second provision of the third
clause then follows, and is a legacy of four insurance poli-
cies, described by their numbers and the name of the in-
surance company that wrote them. The third provision of
the third clause, which completes page 2 of the will, dis-
poses of all her jewelry, household and office furniture,
moneys, choses in action, stocks, bonds and all other prop-
erty, real, personal or mixed, and effects of every name and
nature which she may own or have an interest in at the time
of her death, including all her right, title and interest in
two government patent rights specifically described, and in
any other patents that may be issued in her name at any
time or in which she may own an interest at her death. All
of the property devised and willed by all three provisions
of the third clause of the will is devised and bequeathed to
Maymie Blue Jenkins, who had worked with the testatrix
in her business as a chiropodist for years before the execu-
tion of the will and up to the death of the testatrix. By
the fourth clause the testatrix names and appoints Maymie
Blue Jenkins as executrix of her will, and therein expresses
her wish and request that she may not be compelled to give
bond or security as such executrix and that she may settle
up the estate in her own way, using her own discretion in
all matters not in conflict with any law of Illinois, the power
being therein given to her, in her official capacity, to sell
any part of the real or personal estate she may deem advis-
able or necessary, and from the proceeds pay the just debts
of the testatrix and costs of administration and make distri-
bution in accordance with the wishes of the testatrix ex-

pressed in her will. To the will was appended, after the signature of the testatrix, this attesting clause, signed by the attesting witnesses, Jennie Hanson and Luvenia Thomas:

"This is to certify that the foregoing instrument (consisting of three (3) typewritten pages, this included, each bearing the signature of the testator,) was at the date thereof signed, published and declared by the testatrix, Margaret B. Williams, as and for her last will and testament, in the presence of us, who in her presence and at her request, and in the presence of each other, have hereunto subscribed our names as witnesses."

The reason for the refusal of the probate court to admit the will to probate clearly appears from the order and this indorsement by the court just after the signatures of the attesting witnesses: "Will refused probate because of insufficient execution, said Luvenia Thomas testifying only one sheet was in her presence when signed." The circuit court apparently reached the same conclusion as the probate court did, although an additional witness, Crandall, (the lawyer who wrote the will,) testified before the circuit court. No witness testified for the contestant, Henry White, in the circuit court. The three witnesses for the proponent (appellant) were the two attesting witnesses aforesaid and Crandall. The two attesting witnesses were well acquainted with the testatrix and had been for several years preceding the attesting of the will. Jennie Hanson, a white woman, was in charge of the McDowell school, which was next door to the testatrix's office in the Republic building. Both had been tenants in the building for about nine years, the testatrix during that time carrying on the business of chiropody and the attesting witness teaching dressmaking. The other attesting witness, Luvenia Thomas, was attending the McDowell school studying dressmaking, and had been for several months previous to attesting the will, and was a boarder with the testatrix while attending said school. These facts doubtless furnish the reasons for the testatrix

calling upon these two to witness her will and depending
upon them and their acquaintance and friendship to witness
it and to give the evidence that would guarantee that it
would be put into effect.

It is not unusual in late years that one or more of the
solemn witnesses to a will have so little regard for the duties
of a witness as to be utterly inattentive at the execution
of the will, or, after the will is executed, so engrossed in
the interests of some person interested in the will as to
forget some of the important things necessary to be done
in executing and attesting the will. It is not necessary in
this case to speculate upon the causes for the unusual testi-
mony of Luvenia Thomas, one of the attesting witnesses.
She did testify positively, in substance, that when she at-
tested the will no one was present but the testatrix and only
the last page of the will was in her presence and in the pres-
ence of the testatrix and the other attesting witness. In
view of the other evidence in the case her testimony can
be given little force or weight, as her own testimony in
other respects, and the testimony of the other subscribing
witness and the scrivener, clearly proves the execution of
the will was in due form under the law. All three of the
witnesses concur in the fact that the attesting witnesses
signed the last page of the instrument purporting to be the
will in the presence of the testatrix and at her request.
Crandall positively testified that he prepared the will in the
office of the corporation counsel at the request of the tes-
tatrix, and that it consisted of three typewritten pages or
sheets fastened together and was contained in a blue cover
which he had obtained in the office of the corporation coun-
sel; that he carried this will of three pages, so fastened to-
gether and covered, to the place of business of the testatrix
during the noon hour on the day that it was executed; that
on arriving there he informed the testatrix what the instru-
ment was and asked her to read it over; that she accord-
ingly read the will and said that it was what she wanted;

that she then called in the two attesting witnesses, Jennie Hanson coming first and followed shortly thereafter by the other attesting witness; that in the presence of the two witnesses and himself the testatrix signed the will, and that immediately thereafter Jennie Hanson signed on the first line under the attesting clause as an attesting witness and then Luvenia Thomas signed immediately under the name of the other attesting witness. He further testified that he asked the testatrix, in the presence of the two attesting witnesses, if the instrument was her will, and that she replied that it was and that it was her request that the two witnesses witness it for her; that it was by mere oversight of his that he failed to have testatrix sign all three pages of the will, in accordance with his custom where the will contained more than one page.

Jennie Hanson corroborated the testimony of Crandall in every particular except one, and that was as to the fact that he asked the testatrix if this was her will. This witness does testify that Mrs. Williams said it was her will and requested both of the witnesses to witness it for her and that they did so in her presence, and that she saw the testatrix sign the will and that it consisted of three pages bound together, in a blue cover, as Crandall had testified. The other attesting witness, Luvenia Thomas, testified that she did not see Mrs. Williams sign her will and that no one was present except testatrix when she witnessed it; that she did not see testatrix's name on the last page of the will when she attested it as attesting witness, but she does positively testify that Mrs. Williams requested her to sign as a witness, saying, "Lulu, I want you to sign this," and that the testatrix laid the will on the table and she signed it as a witness. In answer to the question, "Did you see her name on the paper at the time that you signed the paper?" she made the remarkable answer, "No; I didn't look at the paper; I didn't notice anything." She does, however, sufficiently show by her testimony that Mrs. Williams signed

the will and acknowledged it as her signature, for she testified that the testatrix said as the two attesting witnesses came into the room, "Hello, Hanson! I want you to sign this, too, because I have just finished signing it," the testatrix referring to the will in question. The will itself was corroborative proof, with its various provisions and the manner and place of those provisions on the pages. It is in harmony with the proof that no part of it is a forgery. The clause naming appellant executrix is clear proof of the friendship and confidence the testatrix had in appellant, and furnished the reason for giving her such powers and privileges without bond and about all of her property, which left no necessity for a bond. It was identified, page by page, by Crandall, as well as the cover containing it.

The foregoing testimony, with the presumptions deducible therefrom, was ample proof of the execution of the will. It is not necessary that the attesting witnesses see the signature of the testator upon the face of the will, or that an acknowledgment of the signature be made to them by the testator, or that they know that the instrument is a will. The statutory requirement is satisfied if the testator acknowledges execution of the will. (*In re will of Barry,* 219 Ill. 391.) It is not required that the attesting witnesses be in the presence of each other when they sign the will. (*Flinn* v. *Owen,* 58 Ill. 111; *Rupp* v. *Jones,* 289 id. 596.) Where the attestation clause is in due form and the will bears the genuine signatures of the testatrix and the subscribing witnesses it is *prima facie* evidence of the due execution of the will, and this *prima facie* case will not usually be overcome because one of the subscribing witnesses testifies that all of the requirements were not complied with. (*Thompson* v. *Karme,* 268 Ill. 168; *Rupp* v. *Jones, supra.*) The testimony of the subscribing witness who seeks to impeach the will should be received with caution, particularly where the weight of the evidence is against her testimony, which is conflicting in itself and positively

contradicted by two other witnesses who appear to be credible witnesses.

All the witnesses agree, without a single exception, that the testatrix was of sound mind and disposing memory, and there is no question upon that point.

The order and judgment of the circuit court must be and is reversed and the cause remanded to the circuit court, with directions to enter up an order and judgment probating the instrument in question as the last will and testament of the testatrix.

*Reversed and remanded, with directions.*