(No. 23833.—

WILLIAM J. SZARAT, Admr., *et al.* Appellees, *vs.* JOSEPHINE SCHUERR, Appellant.

*Opinion filed February 12, 1937.*

WACHOWSKI & WACHOWSKI, (CASIMIR R. WACHOWSKI, of counsel,) for appellant.

EUGENE BERNSTEIN and JULIUS L. HANDELMAN, (MAXFIELD WEISBROD, of counsel,) for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

John J. Szarat died leaving a purported last will and testament which was offered for probate in the probate court of Cook county. That court refused to admit it and an appeal was taken to the circuit court where probate was again denied. The probate court held that the testator had sufficient testamentary capacity to make a will and was under no undue influence, but that the will was not attested by two witnesses in the presence of the testator. The circuit court held likewise. On appeal to this court, the issue

of testamentary capacity has been virtually abandoned; and properly so, because the evidence is wholly insufficient to support a finding of mental incapacity. The only remaining question is whether or not the purported will was attested in the presence of the testator.

The attesting witnesses were Leland K. Baska and J. George Bolton. The latter testified that he and Baska signed the will in the testator's presence. However, Baska testified his signature was not affixed in the presence of the testator. Baska and the testator were police officers assigned to duty at the dog pound in Chicago. In the front of the building in which the pound is located there was a room through the center of which ran a counter dividing the room into two parts. There were two desks on one side of the counter and this portion of the room was used for office purposes. On the evening of April 4, 1935, Bolton and Gloria Royston, friends of the testator, came to the pound and shortly thereafter coffee and pie were served. The testator then produced the purported will, stated what it was and asked the men to sign as witnesses. Bolton signed it and then the testator picked it up and took it over to Baska's desk and asked him to sign it. Baska was busy at the time making out a report and asked if the testator and Bolton had signed it. Upon receiving an affirmative reply, he took the paper and he testified the testator thereupon left the room and went into the part of the building where the dog cages were located. Baska claimed he read the attestation clause and affixed his signature in the absence of the testator. Gloria Royston testified she was present and that Baska's signatures were affixed in the testator's presence. Baska was a notary public and not only signed the will as a witness but signed it in his official capacity and affixed his seal to the document.

The attestation clause stated that the will was signed, sealed, published and declared by the testator as and for his last will and testament in the presence of the witnesses,

who, at the testator's request, and in his presence and in the presence of each other, had subscribed their names as witnesses thereto.

The testator was a divorced man with grown children. Josephine Schuerr became his housekeeper and the relations between her and Szarat were adulterous. She is the chief beneficiary under the will and is one of those named as executrices.

Several witnesses were produced who testified that after the death of Szarat, Baska admitted he signed the will in the presence of the testator. Baska, however, denied making such admissions. Under the circumstances of this case, we think it is unnecessary to comment further upon that testimony. Here we have a will, where it is admitted that all signatures are genuine. One of the witnesses testified that the will was attested by both witnesses in the presence of the testator. The other witness makes denial of the very facts set forth in the attestation clause which he admits he read before signing the instrument, and his denial is made in the face of the facts that he added to the instrument the words "Subscribed and sworn to before me this 4th day of April, 1935—Leland K. Baska, Notary Public" and affixed his seal.

In *Kuehne* v. *Malach*, 286 Ill. 120, *Schofield* v. *Thomas*, 236 id. 417, and *Gould* v. *Theological Seminary*, 189 id. 282, we quoted, with approval, from *Orser* v. *Orser*, 24 N. Y. 51: "A will duly attested upon its face, the signatures to which are all genuine, may be admitted to probate although none of the subscribing witnesses are able to swear, from recollection, that the formalities required by the statute were complied with, and even though some of them should swear positively that they were not, if the other evidence warrants the inference that they were." We said in the *Kuehne case:* "Where the testimony of a living witness amounts to a positive denial of a certificate of attestation, the relative weight to be given the conflicting tes-

timony would depend very largely on the apparent integrity and intelligence of the witnesses and the circumstances of each particular case. Where a witness who has subscribed to a will stating in the attestation clause all the facts required for a proper attesting of the will testifies on the hearing to a contrary state of facts, he thereby assumes an attitude which is not only inconsistent with the position that he has voluntarily taken but one that may well be argued to be suggestive of fraud and double dealing."

In *Beck* v. *Lash,* 303 Ill. 549, we said that an attesting witness cannot be too severely criticised for signing an attesting clause like the one in this case and then swearing to the contrary when he is produced as a witness in court. It is his duty either to refuse to become an attesting witness; or else to know the character of the statements he signs and stand by them when called upon to testify. To the same effect is *Hart* v. *Hart,* 290 Ill. 476.

The testimony of a subscribing witness who seeks to impeach the will should be received with caution when his evidence is conflicting in itself and positively contradicted by other witnesses who appear to be credible. (*Jenkins* v. *White,* 298 Ill. 502.) While a subscribing witness is competent to impeach the due execution of a will, such testimony is received with caution and is rightly viewed with suspicion. (*Kuehne* v. *Malach, supra;* 14 Encyc. of Evidence, 422.) In *Hutchison* v. *Kelly,* 276 Ill. 438, and *Kuehne* v. *Malach, supra,* one of the subscribing witnesses in each case repudiated the statement signed, and denied that the testator was present when the instrument was signed by the witness. We held in each case that the preponderance of the evidence was contrary to the testimony of the witness. In the *Hutchison case* the judgment refusing probate was reversed, and in the *Kuehne case* the judgment admitting the will to probate was affirmed. It did not affirmatively appear in either of those cases that the witness had read the attestation clause.

Baska's testimony that Szarat handed him the instrument and said it was his will, and that the witness did not think that Szarat knew the instrument was his last will, and his later statement that Szarat told him "I've got a will here" is contradictory within itself and tends to discredit him. According to his testimony he had ample time to deliberate on the contents of the attestation clause. If Szarat was not present, it was Baska's duty to refuse to sign the will. If his testimony is to be believed, he knew the attestation clause was untrue, but nevertheless signed and notarized the instrument. While notarizing can lend no efficacy to a will nor detract from its validity, Baska undoubtedly understood that the jurat of a notary public is for the purpose of authenticating or verifying the statements in the instrument to which it is attached.

The will was executed on April 4 and Szarat died May 15. The order of the probate court denying probate of the will was entered on October 2. Baska's testimony in that proceeding was to the same effect as his testimony in the circuit court. This is not a case where the long lapse of time might account for a failure to rightly remember whether or not the testator was present when the witness signed and no such claim or suggestion is made. On the contrary, less than six months had elapsed since the execution of the will and Baska's testimony is positive that he signed it in the absence of Szarat. The manifest weight of the testimony shows that Szarat was present when Baska and Bolton signed the will as witnesses.

The judgment is reversed and the cause is remanded to the circuit court with directions to admit the will to probate.

*Reversed and remanded, with directions.*