(No. 25395.—

WILLIAM BRELIE, Exr., Appellee, *vs.* RAYMOND A. WILKIE, Appellant.

*Opinion filed February 21, 1940—Rehearing denied April 3, 1940.*

SOMMERS & SOMMERS, for appellant.

ROBERT C. HARDY, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The question involved in this appeal is whether the purported last will and testament of Alvina W. Clark, deceased, was properly executed. The probate court and, on the appeal, the circuit court of Cook county, admitted it to probate. The instrument disposed of real estate, and Raymond A. Wilkie, as the only heir-at-law of Alvina W. Clark, has appealed directly to this court.

Appellant's contention is that the alleged will was not properly executed for the reason that at the time the subscribing witnesses signed, it was not signed by the testatrix, and hence the requirements of section 2 of the Statute of Wills (Ill. Rev. Stat. 1939, chap. 148, par. 2) were not complied with. The purported will, consisting of two pages of ruled paper, was written in longhand. Immediately above the signature of testatrix was the usual attestation clause, containing all the requirements of a properly executed will. Immediately below the attestation clause was the following:

```
"June 26, 1934                    Testatrix
 Witnesses:                       Alvina W. Clark
     Joseph P. Riley, 918 N. Laramie Ave.
   · Rose M. Sullivan, 912 N. Laramie Ave.
     W. A. Sullivan, 912 N. Laramie Ave.,"
```

The only persons who testified as to the circumstances surrounding the execution of the will were Rose M. Sulli-

van and her husband, W. A. Sullivan, subscribing witnesses. The record is silent as to why Joseph P. Riley, the other subscribing witness, did not testify. It is established that testatrix was of sound mind, that her signature and that of Rose M. Sullivan and W. A. Sullivan are genuine, and that Mr. and Mrs. Sullivan signed at the request and in the presence of testatrix. Mrs. Sullivan testified that at the time she signed, which was about 10:00 o'clock in the morning of June 26, 1934, testatrix told her she was "going to" make a will; that the will was folded so that she could see three or four lines above the signature of Joseph P. Riley, and that the space where "June 26, 1934," "Testatrix," "Witnesses" and "Alvina W. Clark" now appear was then blank. W. A. Sullivan testified that he signed about 10:00 o'clock that night; that the instrument was then folded just above the signature of Joseph P. Riley, and that he did not see the signature of Alvina W. Clark, but he did not testify she had not signed the will at that time. He testified she said this was "to be" her will.

The rules of law governing our determination of this question have been frequently announced by this court. The statute relating to the requirements of due execution of a will is mandatory, and it is indispensable that these provisions be complied with in order to make a valid will. (*Harris* v. *Etienne*, 315 Ill. 540.) There can be no attestation of a will unless it is first signed by the testator, except when the several acts of signing take place upon the same occasion and as parts of the same transaction. (*Gibson* v. *Nelson*, 181 Ill. 122.) It is not necessary that the attesting witnesses see the signature of the testator upon the face of the will, that they know the instrument they are witnessing to be a will, or that an acknowledgment of the signature be made to them by the testator. The statutory requirement is satisfied if the testator acknowledges the execution of the will. (*Gould* v. *Chicago Theological Seminary*, 189 Ill. 282.) When the testator calls a paper his will, it is pre-

sumed, in the absence of any evidence to the contrary, that he has signed it, inasmuch as a signature is necessary to justify him in calling it a will. (*Hobart* v. *Hobart,* 154 Ill. 610.) Where the attestation clause is in due form and the will bears the genuine signatures of the testatrix and the subscribing witnesses, it is *prima facie* evidence of the due execution of the will; and this *prima facie* case is not overcome by the mere fact that the subscribing witnesses testify they failed to notice whether the will was signed or not, and cannot remember whether they saw the signature. (*Hobart* v. *Hobart, supra; Gould* v. *Chicago Theological Seminary, supra.*) Such *prima facie* case will often prevail over the testimony of the attesting witnesses which tends to show that some of the requisites were omitted. (*Jenkins* v. *White,* 298 Ill. 502; *Rupp* v. *Jones,* 289 id. 596; *Gould* v. *Chicago Theological Seminary, supra.*) It is further the rule that the testimony of subscribing witnesses who seek to impeach a will is to be received with caution and is rightly viewed with suspicion. (*Gilbert* v. *O'Neale,* 371 Ill. 427; *Szarat* v. *Schuerr,* 365 id. 323; *Kuehne* v. *Malach,* 286 id. 120.) The testimony of subscribing witnesses may be so inherently improbable, conflicting in itself, and their conduct be of such a nature as to discredit their whole testimony, even in the absence of contradictory evidence. *Kuehne* v. *Malach, supra.*

Thus we have a will, on the face of which no defect appears, and on which the signatures of the testatrix and subscribing witnesses are genuine. These facts establish a *prima facie* case of due execution. Our question, then, is, bearing in mind the above rules, does the testimony of W. A. Sullivan and Rose M. Sullivan overcome this *prima facie* case? We have carefully analyzed their testimony, and have observed many inconsistencies and a poor recollection of most things and a remarkably good recollection of others. It is evident from their testimony that they were not impartial witnesses, but testified with a view to having

the will declared invalid. It will be observed that W. A. Sullivan did not testify the will was not signed by Mrs. Clark at the time he attested it, but merely that it was folded in such a manner that he could not see whether or not it was signed. Under the authorities above cited, the fact that a subscribing witness failed to see the testator's signature does not tend to overcome the *prima facie* case of due execution. However, on the question of acknowledgment he repeatedly testified that when Mrs. Clark asked him to sign she said "This is to be my will." His recollection of everything except that she said it was "to be" her will, and that it was folded so he could not see the signature of testatrix, was very poor, and he once stated "It was so long ago." He signed the will June 26, 1934. This testimony was given June 22, 1939. He testified no one except Mrs. Clark was present when he signed, but on being confronted with his testimony in the probate court, admitted Mrs. Sullivan was also present. Similarly he denied Mrs. Clark acknowledged the instrument to be her will, but admitted he had testified in the probate court that she did acknowledge it. He did not remember whether the will then contained one or fifty sheets, but remembered distinctly how it was folded and exactly what she said. Counsel for appellant stress the fact Mrs. Clark said it was "to be" her will. However, in view of the fact that five years had elapsed since this transaction occurred, and considering Mr. Sullivan's poor recollection of other things which occurred at the same time, it is highly improbable that he remembered her exact words. It seems more likely that this was an attempt to bolster Mrs. Sullivan's testimony to the effect that Mrs. Clark was going to write out the will later, although W. A. Sullivan did not sign until 10:00 o'clock at night and, according to Mrs. Sullivan's testimony, Mrs. Clark was going to write out her will that afternoon.

Mrs. Sullivan was also vague and uncertain as to everything except that Mrs. Clark said "she was going to make

a will" and that the will was folded in such a manner that she could see the space where the signature of Mrs. Clark appears and that it was not then signed. On several matters she testified to one thing in the circuit court and admitted she had testified differently in the probate court. Moreover, there was a constant attempt on her part to at least insinuate that the entire will was to be written out after she had signed as a witness and that the paper was blank when handed to her, and counsel for appellant argue to this effect. However, on questioning, she admitted she saw Joseph D. Riley's signature; that she could only see three or four lines above his signature; and that she did not know whether one or two sheets were handed to her. The will was written in longhand on ruled paper, and it concludes on the line immediately above the signature of testatrix. From an examination of the will, nothing appears to indicate the will was so worded or the writing so spaced as to purposely bring about this result. As a practical matter, there is no reason for a person to have witnesses sign a blank paper and then write out the will in such a manner that it terminates immediately above the signature, and it is unreasonable to suppose this was done in this case.

In view of the character of the testimony of the subscribing witnesses seeking to impeach the will, we are of the opinion the probate and circuit courts did not err in holding their testimony did not overcome the *prima facie* case made by the proponent. The judge of each court saw and heard the witnesses and had advantages we do not possess in judging of the weight that should be given to their testimony.

The order of the circuit court is affirmed.

*Order affirmed.*