*In re* ESTATE OF IRENE CHLEBOS, Deceased (Patrick T. Murphy, Public Guardian of Cook County, Petitioner-Appellant).

First District (2nd Division)   No. 1—88—2244

Opinion filed January 16, 1990.

Patrick T. Murphy, Public Guardian, of Chicago (Rebecca S. Kolleng, of counsel), for appellant.

No brief filed for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Patrick T. Murphy, the Public Guardian of Cook County, appeals from the circuit court's order admitting the deceased's will to probate. On appeal, Murphy contends that the testimony of the attesting witnesses to the will was insufficient to prove that the deceased was of sound mind and memory at the time that the will was executed. Although the deceased's estate has failed to file a brief on appeal, we will consider the matter under *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 131-33, 345 N.E.2d 493. However, before we address the merits of the appeal, we will review whether it must be dismissed pursuant to *In re Estate of Martino* (1979), 72 Ill. App. 3d 867, 869-70, 391 N.E.2d 412.

We have a duty to consider our jurisdiction whether or not the issue was raised by the parties. (*Johnson v. Northwestern Memorial Hospital* (1979), 74 Ill. App. 3d 695, 697, 393 N.E.2d 712.) Murphy's brief states that an order admitting a will to probate is appealable under Illinois Supreme Court Rule 304(b)(1) (107 Ill. 2d R. 304(b)(1)). Rule 304(b)(1) provides in part:

"The following judgments and orders are appealable without the finding required for appeals under paragraph (a) of this rule:

(1) A judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." (107 Ill. 2d R. 304(b)(1).)

The Committee Comments to Rule 304(b)(1) state that an order admitting a will to probate is appealable. (Ill. Ann. Stat., ch. 110A, par. 304, Committee Comments, at 14 (Smith-Hurd Supp. 1989).) However, *In re Estate of Martino* (1979), 72 Ill. App. 3d 867, 869-70, 391 N.E.2d 412, held that an order admitting a will to probate is not appealable despite the Committee Comments because such an order is

an interlocutory order rather than a final one. The court observed that an order admitting a will to probate neither terminates the litigation on the merits nor settles the rights of the parties, and that the Probate Act of 1975 prescribes a procedure for contesting a will. (See Ill. Rev. Stat. 1987, ch. 110½, par. 8—1.) However, we agree with the contrary result reached in *In re Estate of Lynch* (1982), 103 Ill. App. 3d 506, 508-09, 431 N.E.2d 734, which declined to follow *Martino* and instead held that an order admitting a will to probate is appealable under Rule 304(b)(1). Given that an admission hearing under section 6—21 of the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 6—21) does not toll the time for filing a will contest under section 8—1 (Ill. Rev. Stat. 1987, ch. 110½, par. 8—1), the court in *Lynch* reasoned that a party opposing a will who appeals from an order admitting the will to probate would have no remedy if no will contest were filed or if the six-month deadline for filing one had expired. The record in the present case does not disclose whether a will contest has been filed. Nevertheless, we believe that *Lynch* expresses the better view, and we therefore decline to dismiss the appeal and instead turn our attention to the merits. See also *In re Estate of Thomas* (1972), 6 Ill. App. 3d 70, 284 N.E.2d 513 (which reviewed an appeal from an order admitting a will to probate).

Irene A. Chlebos (hereinafter referred to as deceased) died on May 14, 1987. Her son, Robert J. Pilarski (hereinafter referred to as Pilarski), petitioned the circuit court of Cook County for admission of the will to probate, and on November 23, 1987, the court granted his petition. On December 29, 1987, Murphy, acting as guardian of the estate of deceased's daughter, Bonita J. Pilarski, who is described in Murphy's brief as mentally disabled, filed a petition requesting formal proof of the will, and a hearing was subsequently held.

At the hearing, the two subscribing witnesses to the will, Kenneth A. Burnett and Elwyn L. Johnson, testified that they witnessed deceased's signing of the will at Loyola Hospital on January 5, 1987. They testified that they signed in the presence of deceased and each other, and that she signed in their presence. The record discloses that the will consists of two pages. The dispositive paragraph appears to bequeath $100 to Bonita "as she is being adequately taken care of for her lifetime," and the remainder of the estate (estimated at $90,000) to Pilarski. The attestation clause signed by Burnett and Johnson states:

> "We, the undersigned, saw Irene A. Chlebos, in our presence, sign this instrument at its end; she then declared it to be her Will and requested us to act as witnesses to it; we believed her

to be of sound mind and memory and not under duress or constraint of any kind; and then we, in her presence and in the presence of each other, signed our names as attesting witnesses; all of which was done on the date of this instrument."

Kenneth Burnett testified that Pilarski, a co-worker, asked him to witness the execution of the will, which Burnett believed had been drafted by Pilarski. Burnett had never met deceased prior to witnessing her will, but he had a brief conversation with her about the will before he witnessed it. He did not remember the exact conversation, but he believed that deceased told him that he was going to witness the will.

When initially asked whether he believed that deceased was of sound and disposing mind and memory, Burnett responded, "I believe you know I am not a psychiatrist; yes. We held a conversation." When twice asked the same question again, he answered, "I believe so, yes," and "I believe she was." Burnett testified that he believed that deceased was of sound mind because she was "awake" and "coherent enough to sign her name." When questioned about deceased's mental condition, Burnett responded, "I am not a medical doctor or psychologist." Burnett testified that deceased looked at the will for "a long time" but he did not know whether she was reading it. He believed that Pilarski discussed the will with deceased, but the only portion of the conversation that he remembered was when Pilarski told deceased, "[S]ign here." Nobody physically moved deceased's hand when she signed the will. Burnett testified that he could not say that deceased was not of sound mind because he had a conversation with her, but that he did not know whether she was of sound memory.

When asked whether deceased was under duress, Burnett responded that he did not know, that he must have believed when he witnessed the will that she was under no duress, that she was a "sick lady," that he could not "give a yes or no answer," that "[s]he may have been, she may not have been," and that "[i]t is possible that she may have been under duress." He testified further that he had not learned anything that would lead him to believe that deceased was not of sound mind or memory or that she was under duress.

Elwyn Johnson testified that Pilarski asked him to witness the will while Johnson was visiting his (Johnson's) wife, who was deceased's roommate in the hospital. Johnson testified that he believed that deceased was of sound mind and memory and that she was not under duress or any other constraint. However, he never had any conversation with deceased, she never said anything in his presence, and he did not hear any conversation between deceased and anyone else

at the time that the will was signed. He did not discuss the will with her, and nobody in his presence read it to her. She was not physically assisted in signing it, she was not connected to hospital equipment or tubes, and "she acted normal[ly]."

Paula Dwyer, a staff attorney with the public guardian's office, testified in rebuttal that Kenneth Burnett had told her privately prior to the hearing that deceased did not know what she was doing when she signed the will, that deceased was in "very bad shape" and was about to undergo open heart surgery, that he did not want to witness the will, and that Pilarski and Pilarski's wife pressured him to be a witness. Dwyer testified further that Burnett indicated that Pilarski and Pilarski's wife could cause trouble for him in connection with certain legal proceedings which were pending and certain political ambitions harbored by Burnett.

At the conclusion of the hearing, the will was admitted to probate. The trial court observed that the testimony was sufficient to fulfill the statutory requirements. Murphy has appealed, contending that the testimony of Burnett and Johnson was insufficient proof that deceased was of sound mind and memory when she signed the will.

■■■ Admission of a will to probate is governed by section 6—4 of the Probate Act, which provides in relevant part:

"When each of 2 attesting witnesses to a will states that *** (3) he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will." (Ill. Rev. Stat. 1987, ch. 110½, par. 6—4.)

The statutory requirements of section 6—4 are mandatory, and "it is indispensable that these provisions be complied with in order to make a valid will." (*In re Estate of Carroll* (1989), 192 Ill. App. 3d 202, 207.) However, the court will indulge every presumption in favor of the execution and attestation of a will which apparently has been executed in due form. (See *In re Estate of Carroll*, 192 Ill. App. 3d at 207; *In re Estate of Thomas* (1972), 6 Ill. App. 3d 70, 72, 284 N.E.2d 513.) If the document contains an attestation clause which discloses that all of the statutory requirements have been met, and the signatures admittedly are genuine, then a *prima facie* case exists favoring due execution of the will, which can be rebutted by positive testimony of the subscribing witnesses that a statutory requirement was not satisfied. (*In re Estate of Thomas*, 6 Ill. App. 3d at 72.) The attesta-

tion clause is given the benefit of reasonable presumptions even if the witness fails to remember the surrounding events. (*In re Estate of Carroll*, 192 Ill. App. 3d at 207.) Therefore, if it is merely doubtful whether the requirements have been met, the presumption arising from the attestation clause is not rebutted. (*In re Estate of Carroll*, 192 Ill. App. 3d at 207; *In re Estate of Thomas*, 6 Ill. App. 3d at 72-73.) Moreover, where the testimony of an attesting witness is not affirmative and is contradictory, vague and lacking in conviction, then the trial court justifiably may reject it in favor of the attestation clause. (*In re Estate of Thomas*, 6 Ill. App. 3d at 73.) Execution of a will "may be sufficiently proved where one attesting witness testified positively to the requisites of execution and the other witness does not recollect or denies compliance with the statutory requisites." (*In re Estate of Koss* (1967), 84 Ill. App. 2d 59, 70, 228 N.E.2d 510; see also *In re Estate of Krausman* (1971), 131 Ill. App. 2d 514, 517, 268 N.E.2d 505; *In re Estate of Hart* (1967), 79 Ill. App. 2d 134, 144-45, 223 N.E.2d 466.) The trial court's decision will be reversed on appeal only if it contravened the manifest weight of the evidence. *In re Estate of Koss*, 84 Ill. App. 2d at 71; see also *In re Estate of Carroll*, 192 Ill. App. 3d at 208.

■ Turning to the present case, we believe that there was insufficient evidence to overcome the presumption of due execution of the will. Johnson testified that he believed that deceased was of sound mind and memory. Burnett testified that he had a brief conversation with deceased, who specifically told him that he would be witnessing the will. Based upon that conversation, Burnett believed that deceased was of sound mind. His equivocal testimony concerning her memory and whether or not she was under duress merely expressed doubt and was lacking in conviction. As such, it was insufficient to rebut the presumption to be accorded to the attestation clause.

Although we have some concern about Dwyer's impeachment testimony, there was no proof of "fraud, forgery, compulsion or other improper conduct" which would have precluded probate of the will.

Our conclusion that the trial court's decision admitting the will to probate did not contravene the manifest weight of the evidence is not inconsistent with the cases cited in Murphy's brief. For example, in *In re Estate of Jacobson* (1979), 75 Ill. App. 3d 102, 107, 393 N.E.2d 1069, the court denied admission of a will to probate because the evidence regarding the soundness of the deceased's mind and memory was "patently insufficient." Two of the attesting witnesses unambiguously testified that the deceased was incompetent and that they signed the will merely to be cooperative. In the case at bar, we do not

52

believe that the evidence of the soundness of deceased's mind can be characterized as patently insufficient, and we therefore decline to disturb the trial court's order admitting the will to probate.

The judgment of the circuit court is affirmed.

Judgment affirmed.

HARTMAN and BILANDIC, JJ., concur.