*In re* ESTATE OF CHESTER KOZIOL, Deceased (Benjamin Koziol *et al.*, Petitioners-Appellees, v. Gerald Strelak, Sr., Indiv. and as named Ex'r under a purported Will of Chester Koziol, Deceased, Respondent-Appellant (Theodore Koziol, Independent Adm'r of the Estate of Chester Koziol, Deceased, Intervenor-Appellee)).

First District (1st Division)   No. 1—90—3593

---

Opinion filed October 13, 1992.

Kogut & Associates, of Des Plaines (Charles Kogut and Anthony J. Kogut, of counsel), for appellant.

Shaheen, Lundberg, Callahan & Orr, P.C., of Chicago (Henry N. Novoselsky, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Chester Koziol died on September 9, 1990. Ten days later, Chester's stepson, Gerald Strelak, filed a petition for the probate of Chester's will. On September 24, 1990, the will was admitted to probate, and Strelak was appointed independent executor of the estate. Petitioners, Benjamin Koziol, Sharon Simunjak, and George Swies, heirs at law of Chester, filed a "Petition for Formal Proof of Will" on September 28, 1990. Following proceedings on that petition, the circuit court denied confirmation of its initial admission of the will into probate. Strelak appeals that denial of confirmation.

We reverse and remand.

Chester was predeceased by his wife, Francine. The couple were childless although Francine had two children, Gerald and Richard Strelak, from a previous marriage. Chester was survived by four brothers and sisters and six nieces and nephews, the children of predeceased siblings.

The purported will, dated January 25, 1988, consists of two type-written pages and bears Chester's signature at the bottom of the first page and at the middle of the second page. Following Chester's signature, an attestation clause appears, which states:

> "The above and foregoing instrument was on the date hereof signed, published and declared by the said CHESTER KOZIOL as and for his last WILL and TESTAMENT in the presence of each other subscirbed [sic] our names and addresses as attesting witnesses thereto and at the time of said signing we believed the testator to be of sound mind and disposing memory.

/s/ Kenneth Simunjak address 3332 W. 37 Place
/s/ Sharon Simunjak address 3332 W. 37th Place
/s/ Robert M. Strelak address 1557 Teal Ln 2-B

SUBSCRIBED AND SWORN to before me this 25th day of January, A.D. 1988.
/s/ Corrine L. Edling, NOTARY PUBLIC"

According to the will's provisions, all of Chester's real and personal property devolved to Strelak. Strelak's son was to take under the will if his father predeceased Chester. Chester's other stepson, Richard, and each of Chester's surviving brothers and sisters were to receive $10.

At the subsequent proceedings held pursuant to the petition, Kenneth Simunjak testified that he is the husband of Sharon Simunjak, Chester's niece. Although he identified the signature on the will as his own, Kenneth stated that he never saw Chester sign the document. In fact, Chester never asked him to witness the will. Strelak simply brought the document to Kenneth's apartment and asked him to sign it.[1] At the time, Strelak claimed the document was a "power of attorney" for "[his] mother's bills." Kenneth stated that both he and his wife signed the document, the first page of which was "turned down." Kenneth recalled that, at the time he signed the document, Robert Strelak's signature was not on it. No notary public was present at that time.

Sharon Simunjak's testimony was similar to Kenneth's in most respects. She identified her signature as her own; however, Chester never asked her to sign or witness the document nor did he ever show it to her. Strelak asked her to sign the document, which he referred to as a "power of attorney" for his "mother's checks." Sharon only "glanced" at the document but did not read it. At the time, Robert Strelak's signature was not on the document, and no notary public was present.

Robert M. Strelak, Strelak's nephew, testified that Chester asked him to sign the will as a witness. Robert saw Chester sign the will in the presence of Kenneth and Sharon, as well as Strelak and the notary public. Robert stated that he read the document before signing it.

---

[1]Testimony established that the Simunjaks lived in an apartment directly below Koziol's in the same building.

Over petitioners' objections, Corrine L. Edling testified that Chester, whom she had known for 32 years, asked her to prepare a will for him. She prepared the document in triplicate, with the help of an attorney. Chester also asked her to notarize the document for him. On January 25, 1988, Edling witnessed Chester and all three attestation witnesses sign the document, which she notarized. Edling did not know Kenneth or Sharon at that time; however, she is Strelak's former sister-in-law.

Following the testimony, the circuit court ruled that a notary public who notarizes a will at the testator's request does not qualify as an attesting witness for admission of the testator's will to probate. The court denied admission of the will into probate, finding that the statutory requirements were not met because the will was not properly attested.

Strelak argues that the circuit court erred in determining that a notary public does not qualify as an attesting witness for purposes of admitting the will to probate.

Section 4—3 of the Probate Act of 1975 provides that every will must be in writing and signed by the testator. The will is to be "attested in the presence of the testator by 2 or more credible witnesses." (Ill. Rev. Stat. 1987, ch. 110½, par. 4—3.) The Probate Act is silent as to what role, if any, a notary public has during the execution of a will, and our supreme court has only touched upon this issue. In *Gump v. Gowans* (1907), 226 Ill. 635, 80 N.E. 1086, a deed which had been acknowledged before a notary public was presented for admission to probate. The notary had affixed his signature to the certificate of acknowledgement. The court stated that perhaps the certificates which show that the maker acknowledged to the notary that she signed the instrument would be sufficient to make the notary a subscribing witness. However, due to the lack of a second competent witness, the instrument was denied probate as a will. In *Szarat v. Schuerr* (1937), 365 Ill. 323, 6 N.E.2d 625, an attesting witness who had signed the testator's will later recanted his attestation at the ensuing probate proceedings, claiming that he did not sign the document in the testator's presence. The circuit court denied the will's admission to probate. The supreme court reversed, ruling that the witness, who also had served as a notary public and who had attached his jurat reciting that the instrument was subscribed and sworn before him, should have refused to sign the attestation clause if the testator was not then present: "While notarizing can lend no efficacy to a will nor detract from its validity, Baska [the notary] undoubtedly understood that the jurat of a

notary public is for the purpose of authenticating or verifying the statements in the instrument to which it is attached." *Szarat*, 365 Ill. at 327.

█ Both *Szarat* and *Gump*, therefore, suggest that a notary public's testimony may be relevant since the notary's jurat signifies some type of authentication or verification of the statements in the instrument to which it is attached. Moreover, our supreme court has ruled that the proponent of a will may support the will by any evidence competent to establish a will in chancery; however, it is the contestants who are limited to the subscribing witnesses as to evidence of the execution of the will and the testamentary capacity, except where there is fraud, forgery, compulsion, or other improper conduct at the time of the execution of the will. (*In re Will of Hamilton* (1951), 408 Ill. 187, 96 N.E.2d 562; *Spangler v. Bell* (1945), 390 Ill. 152, 60 N.E.2d 864; *Bley v. Luebeck* (1941), 377 Ill. 50, 35 N.E.2d 334; *Flynn v. Flynn* (1918), 283 Ill. 206, 119 N.E. 304; see also Wright, *A Probate Judge Looks At Opening the Estate & Issuance of Letters of Office*, 59 Ill. B.J. 324, 325 (1970).) Since Edling's testimony was offered by the proponent of the will, we rule that Edling's testimony should have been received into evidence, particularly under the circumstances presented here.

██ █ Illinois has long recognized that where an attesting witness impeaches or denies the execution of a will or any fact essential to establish its validity, such testimony is entitled to little credence and should be viewed with suspicion and caution. (*In re Estate of Willavize* (1960), 21 Ill. 2d 40, 171 N.E.2d 21; *Spangler v. Bell* (1945), 390 Ill. 152, 60 N.E.2d 864; *Brelie v. Wilkie* (1940), 373 Ill. 409, 26 N.E.2d 475; *Gilbert v. Oneale* (1939), 371 Ill. 427, 21 N.E.2d 283; *Jenkins v. White* (1921), 298 Ill. 502, 131 N.E. 634; *In re Estate of Koss* (1967), 84 Ill. App. 2d 59, 228 N.E.2d 510.) Edling's notarization tends to prove the authenticity of the Simunjaks' signatures and the verification of the attestation clause, which are now in dispute. Indeed, that is the function of a notary public, an official who is defined as "[o]ne who is authorized by the state or federal government to administer oaths, and to *attest to the authenticity of signatures.*" (Emphasis added.) (Black's Law Dictionary 956 (5th ed. 1979).) In view of this, the circuit court erred in barring Edling's testimony.

In so holding, we do not address the question of whether Edling can be considered an attesting witness. We merely hold that Edling's testimony should have been admitted to prove the authen-

484

ticity of the attestation clause and the verification of the signatures.

Strelak next challenges the circuit court's finding that the will was not attested in the manner mandated by the Probate Act.

■ Where the testator and two attesting witnesses have signed a will, every presumption will be indulged in favor of the execution and attestation of the will. (*In re Estate of Willavize* (1960), 21 Ill. 2d 40, 171 N.E.2d 21; *In re Estate of Chlebos* (1990), 194 Ill. App. 3d 46, 550 N.E.2d 1069.) If the instrument contains an attestation clause which shows on its face that all of the formalities required by law have been met, and the signatures on the instrument are admittedly genuine, a *prima facie* case has been made in favor of the due execution of the will. (*Brelie v. Wilkie* (1940), 373 Ill. 409, 26 N.E.2d 475; *In re Estate of Koss* (1967), 84 Ill. App. 2d 59, 228 N.E.2d 510.) Such a *prima facie* case cannot be overcome by the testimony of a witness that there was not compliance with all the statutory requisites. (*Jenkins v. White* (1921), 298 Ill. 502, 131 N.E. 634; *In re Estate of Hart* (1967), 79 Ill. App. 2d 134, 223 N.E.2d 466.) Moreover, our courts have admitted wills into probate where one of the attesting witnesses did not remember signing the will or complying with the statute. (See *Mead v. Trustees of the Presbyterian Church* (1907), 229 Ill. 526, 82 N.E. 371; *Thompson v. Owen* (1898), 174 Ill. 229, 51 N.E. 1046; *In re Estate of Salzman* (1974), 17 Ill. App. 3d 304, 308 N.E.2d 83; *In re Estate of Krausman* (1971), 131 Ill. App. 2d 514, 268 N.E.2d 505; *In re Estate of Koss*, 84 Ill. App. 2d 59, 228 N.E.2d 510; *Loomis v. Campbell* (1948), 333 Ill. App. 617, 78 N.E.2d 143; see also Wright, *A Probate Judge Looks At Opening the Estate & Issuance of Letters of Office*, 59 Ill. B.J. 324, 325 (1970).) Indeed, our supreme court has stated:

"[W]e know of no rule of law which makes the probate of a will depend upon the recollection or even the veracity of a subscribing witness. The law, for wise and obvious reasons, requires such instruments to be executed and attested with such precautions as will usually guard against fraud; but if the forgetfulness or falsehood of a subscribing witness can invalidate a will, it would be easy, in many cases, to use such artifices or corruption as would render the best will nugatory. Their evidence is not conclusive either way, nor does the law presume that they are either more or less truthful than others." (*Mead v. Presbyterian Church*, 229 Ill. at 530.)

(See also *Conway v. Conway* (1958), 14 Ill. 2d 461, 153 N.E.2d 11 (court noted that very few wills could be upheld if probate court de-

pended upon the recollection or veracity of subscribing witnesses).) We find these comments to be particularly applicable to the present case where one of the recanting attestation witnesses, Sharon Simunjak, is a niece of the testator who, if the will were denied probate, would inherit part of the estate as one of the heirs at law, but who would take only a nominal amount of money by the express terms of the will if it were admitted to probate.

The execution of a will must be sufficiently proved where one witness testifies positively to the requisites of execution and the other witness does not recollect or denies compliance with statutory requirements. (*In re Estate of Chlebos* (1990), 194 Ill. App. 3d 46, 550 N.E.2d 1069; *Loomis v. Campbell* (1948), 333 Ill. App. 617, 78 N.E.2d 143.) Moreover, the circuit court's decision regarding the admission of a will into probate will not be reversed on appeal unless it is against the manifest weight of the evidence. *In re Estate of Carroll* (1989), 192 Ill. App. 3d 202, 548 N.E.2d 650.

Here, two of the three attesting witnesses testified that the statutory requirements were not met, effectively impeaching their attestation. Both claimed that, although their signatures were genuine, Chester neither asked them to sign any will nor did he acknowledge the making of any such document. According to their testimony, it was Strelak, himself, who brought the document, purporting to be a "power of attorney," allegedly for Francine Koziol, to them to sign. However, a review of the second page of the purported will reveals that Chester Koziol's name appears, in capital letters, in the very attestation clause signed by the Simunjaks, followed almost immediately by the words "last WILL and TESTAMENT." Additionally, the words "last WILL and TESTAMENT" appear in two other prominent positions on the page. That the Simunjaks believed they were signing a power of attorney for Koziol's wife is inherently unbelievable in view of the wording which appears prominently on the page both admitted signing. This testimony, when viewed against the document itself and Edling's testimony, is insufficient to rebut the presumption of validity to be accorded the attestation clause. Based on the foregoing, the circuit court's decision denying the admission of the will to probate was against the manifest weight of the evidence.

Although we have some concern about the Simunjaks' impeachment testimony, an order admitting a will to probate is not final as to the execution or validity of the will. (*In re Estate of Ariola* (1979), 69 Ill. App. 3d 158, 386 N.E.2d 862.) Indeed, the validity of the will may be challenged in a will contest brought within six

months of the admission to probate (Ill. Rev. Stat. 1989, ch. 110½, par. 8—1), where all such questions may be tried *de novo*. *In re Estate of Ketter* (1978), 63 Ill. App. 3d 796, 380 N.E.2d 385.

Therefore, the order of the circuit court is reversed, and the cause is remanded with directions to admit the will of Chester Koziol into probate.

Reversed and remanded.

BUCKLEY, P.J., and MANNING, J., concur.