*In re* ESTATE OF ETHEL POLK SMITH, Deceased (J. Levelle Williams, Petitioner-Appellant, v. Ann Y. Koontz, Independent Adm'r with the Will Annexed, Respondent-Appellee).

First District (4th Division)  No. 1—95—3248

Opinion filed June 27, 1996.

Robert C. Power, of Chicago, for appellant.

Morris R. Saunders and Beth D. Krasnow, both of Levin & Ginsburg, Ltd., of Chicago, for appellee.

JUSTICE CAHILL delivered the opinion of the court:

J. LeVelle Williams appeals from the trial court's order admitting the will of her aunt, Ethel Polk Smith, to probate. She contends the will was not properly executed. We consider whether the testimony of one of three witnesses to a will can overcome the

presumption of validity created by a proper attestation of the other two. The testimony of the third witness in this case called into question only his own participation in the execution ritual. No issues were raised about the participation of the nontestifying witnesses. Under the circumstances of this case, though we find that the trial court erred in labeling the testimony of the third witness "vague," the error was harmless and the will was properly admitted to probate. We affirm.

Ethel Polk Smith died on February 6, 1994. On March 1, 1994, John C. Polk, decedent's brother living in Arizona, filed a petition for probate of the will and for letters of administration with the will annexed. Polk said in his petition that decedent had nominated him as executor, he was not willing to act because of his out-of-state status, and he nominated Ann Koontz to replace him. The petition listed decedent's heirs as her brother, John C. Polk, and her nieces, Ann Koontz and J. LeVelle Williams. The approximate value of the estate was stated to be $100,000 in personal property and $50,000 in real property.

The will submitted was a one-page legal form entitled "Last Will and Testament." It was completed in longhand and dated October 7, 1974. The will appointed "My brother John C. Polk, Jr." as executor and directed him to pay just debts and funeral expenses, after which "all the rest and residue" of the estate was given to the following persons in equal shares: John C. Polk, Sr. (father), John C. Polk, Jr. (brother), Ruth Polk Williams (sister), and Frances Polk Koontz (sister). The will further stated: "The share of any person above named who shall not survive me shall go to the other three beneficiaries named above in equal shares." "Ethel P. Smith" was handwritten on the signature line, and the same name was typed below the signature line. Below the signature line, an attestation clause stated:

> "This instrument was, on the date thereof, signed, sealed, published and declared by the Testator as and for her Last Will and Testament, in our presence, who, at her request and in her presence and in the presence of each of us, have subscribed our names hereto as witnesses thereof. And we do hereby certify that at the time of the execution thereof the Testator was of sound and disposing mind and memory."

Three employees of Gateway National Bank subscribed as witnesses: Betty Stepter, Terry Spencer, and B.J. Sutton. They each listed home addresses in Chicago.

The court ordered on March 1, 1994, that the will of Ethel Smith, dated "October 7, 1994 [sic]," be admitted to probate and that letters of office as independent administrator with the will annexed issue to

Ann Koontz. On March 29, 1994, J. LeVelle Williams filed a petition to require proof of the will by testimony under section 6—21 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/6—21 (West 1994)).

A hearing was held on March 24, 1995. The only witness to the will who could be located, Terry Spencer, testified he signed the will at the request of Betty Stepter, who worked in customer service at Gateway National Bank with Spencer. The decedent was a Gateway customer. Spencer believed her to be "of sound mind and memory" when she signed her name to the will and when he witnessed it. He did not see the decedent sign the will and did not think she saw him sign as a witness. He believed, however, that she was in the bank when he signed. Betty Stepter, who had signed before Spencer, was present when he signed. Spencer had no reason to believe Betty Stepter's signature was not genuine.

The niece and administrator, Ann Koontz, testified that the signature on the will was that of the decedent. She knew the signature from letters that decedent wrote to her and from other estate papers that decedent signed around the same time as the will was prepared.

Two affidavits were submitted: one from E. Erikson, a process server and licensed private investigator, and one from John C. Polk, Jr. Erikson stated that he began to search for the two other witnesses to the will—Stepter and Sutton—in November 1994. He searched the post office records, telephone books, marriage licenses for the preceding 20 years, and the voters' registration bureau. He was unable to locate either Stepter or Sutton.

John C. Polk, Jr., stated that he was 73 years old and had moved to Arizona in 1964. Since then, he had visited decedent once a year. For the last six months of decedent's life, he spent $4^{1}/_{2}$ months visiting and caring for her. He was familiar with decedent's signature based on seeing her sign letters, checks, and other papers. He was certain the signature on the will was that of his sister Ethel Polk Smith.

On April 4, 1994, the administrator filed a motion and supporting memorandum to admit the will to probate. In addition to the testimony and affidavits attached to the motion, she asserted that the genuineness of the will was further supported by its presence in decedent's safety deposit box at the Independence Bank at the time of her death. It was removed from the box in the presence of a bank employee. On April 7, 1995, the court entered an order denying admission of the will to probate.

On July 12, 1995, Ann Koontz, as administrator, filed a petition under section 8—2 of the Probate Act (755 ILCS 5/8—2 (West 1994))

to contest the denial of the will to probate. She contended the will's validity was shown by competent evidence, which, for some reason, was "not fully considered by the court." She cited applicable law and asked the court to reconsider its order and enter a new order admitting the will to probate. J. LeVelle Williams answered that no new facts or law had been presented other than what was presented at the hearing on the proof of the will and that the will was not properly executed.

On August 22, 1995, the court vacated its April 7 order and entered an order admitting the will to probate, finding "that the attestation clause in the will is not in dispute, that the signature of the witnesses to the will are not in dispute and the testimony of Terry Spencer, witness to the will, was vague."

J. LeVelle Williams now appeals, contending that the original order denying admission of the will to probate was correct and should prevail over the order admitting the will.

■ The admission of a will to probate is governed by statute. *In re Estate of Weaver*, 50 Ill. App. 3d 223, 229, 365 N.E.2d 1038 (1977). The statute governing the admission of wills to probate states:

"(a) When each of 2 attesting witnesses to a will states that (1) he was present and saw the testator or some person in his presence and by his direction sign the will in the presence of the witness or the testator acknowledged it to the witness as his act, (2) the will was attested by the witness in the presence of the testator and (3) he believed the testator to be of sound mind and memory at the time of signing or acknowledging the will, the execution of the will is sufficiently proved to admit it to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will. The proponent may also introduce any other evidence competent to establish a will. If the proponent establishes the will by sufficient competent evidence, it shall be admitted to probate, unless there is proof of fraud, forgery, compulsion or other improper conduct which in the opinion of the court is deemed sufficient to invalidate or destroy the will.

(b) The statements of a witness to prove the will under subsection 6—4(a) may be made by (1) testimony before the court, (2) an attestation clause signed by the witness and forming a part of or attached to the will or (3) an affidavit which is signed by the witness at or after the time of attestation and which forms part of the will or is attached to the will or to an accurate facsimile of the will." 755 ILCS 5/6—4(a), (b) (West 1994).

■ If an heir demands formal proof of a will, the will must be established by testimony of the witnesses as provided in subsection

6—4(b)(1) or by deposition as provided in section 6—5. 755 ILCS 5/6—21 (West 1994). If a witness to a will is dead or cannot be found, the court may admit proof of the handwriting of the witness and other secondary evidence admissible to establish written contracts and may admit the will to probate as though it had been proved by the testimony of the witness. 755 ILCS 5/6—6 (West 1994). If a will is denied admission to probate, an interested person may file a petition to contest the denial and may present proof to establish the validity of the will and may introduce evidence competent to establish a will. 755 ILCS 5/8—2 (West 1994). The party seeking to have a will admitted to probate has the burden of proving it was properly executed according to statute. *In re Estate of Thomas*, 6 Ill. App. 3d 70, 72, 284 N.E.2d 513 (1972). We will not reverse the trial court's decision to admit a will to probate unless it is against the manifest weight of the evidence. *In re Estate of Koziol*, 236 Ill. App. 3d 478, 485, 603 N.E.2d 60 (1992).

■ J. LeVelle Williams' case rests entirely on Spencer's testimony, 21 years after the execution of the will, that he did not see the decedent sign the will and did not think the decedent saw him sign the will. The court found Spencer's testimony "vague." We disagree with the trial court's finding that Spencer's entire testimony was vague. There is nothing vague about Spencer's statement—made three times, once on direct and twice on cross-examination—that he did not see decedent sign the will. But, our disagreement does not compel the conclusion that the court erred in admitting the will to probate.

Spencer was one of three witnesses who attested to decedent's will. The statute requires only two. 755 ILCS 5/6—4(a) (West 1994). Spencer's testimony does not show that the other two witnesses were not in the presence of the decedent when she signed the will.

Where a testator and two attesting witnesses have signed a will, "every presumption will be indulged in favor of the execution and attestation of the will." *Koziol*, 236 Ill. App. 3d at 484. If the will contains an attestation clause which shows on its face that all statutory guidelines have been met, and the signatures are admittedly genuine, a *prima facie* case of proper execution has been made. *Koziol*, 236 Ill. App. 3d at 484; *Thomas*, 6 Ill. App. 3d at 72.

The will in this case bears the signature of Ethel P. Smith. That signature was validated by her brother, John C. Polk, Jr., and by her niece, Ann Koontz. The attestation clause recites that all of the formal requirements were met for the valid execution of the will. The attestation clause establishes that the decedent and the witnesses signed the will in the presence of each other and the witnesses

believed decedent was of sound mind and memory. The one available attesting witness, Terry Spencer, identified his signature on the will and stated he had no reason to doubt witness Betty Stepter's signature was genuine. He also testified that he believed the decedent was of sound mind and memory when she signed the will and when he signed the will. The administrator established a *prima facie* case for the admission of the will to probate.

The presumption of proper execution is not overcome by evidence that merely calls into doubt the requirements of statutory compliance. *Thomas*, 6 Ill. App. 3d at 72-73. Probate of a will does not depend on the recollection or veracity of a subscribing witness. *Koziol*, 236 Ill. App. 3d at 484.

Spencer's statement that he did not see the decedent sign the will and did not think she saw him sign it is insufficient to rebut the presumption of validity to be accorded the attestation clause and does not call into question the presumptive validity of the signatures of the other two witnesses. Indulging the presumption in favor of the validity of the will, we cannot say the decision of the trial court was against the manifest weight of the evidence.

Affirmed.

HOFFMAN, P.J., and THEIS, J., concur.